**EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–3592.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1994.

Decided June 10, 1994.

Daniel C. Murray, Frederick S. Mueller, William J. Anaya, Johnson & Bell, Chicago, IL, and Robert M. Wattson (argued), Sandra Wallace, and David C. Linder, Zelle & Larson, Minneapolis, MN, for plaintiff-appellant.

Phyllis J. Pyles, Joseph N. Kaster (argued), Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, and James M. Kuhn, Asst. U.S. Atty., Office of the U.S. Atty., Chicago, IL, for defendant-appellee.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

There is something unusual about this case. The Environmental Protection Agency ("EPA") ordered an insurance company, the Employers Insurance of Wausau a Mutual Company ("Employers"), to clean up hazardous materials. Employers protested at first, but eventually complied. It then challenged the EPA's actions via the ordinary process of review: first, it petitioned the EPA for reimbursement of the money it spent in the cleanup; when the EPA denied its petition, Employers filed suit in federal district court. *See Employers Ins. v. Browner,* 848 F.Supp. 1369 (N.D.Ill.1994) and *Employers Ins. v. Clinton,* 848 F.Supp. 1359 (N.D.Ill.1994). So far, so good. What is unusual is that the Employers filed another lawsuit—this case— in which it claimed that the EPA acted tortiously.

Employers brought this case against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1291, 1346, and 2671–80. Employers contends that the United States, through the EPA, tortiously applied the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The district court dismissed Employers' case for lack of subject matter jurisdiction. 830 F.Supp. 453. Employers appeals.

## I.

Employers alleges the following facts in its complaint. On August 24, 1987, a fire consumed a building in Wyandotte, Michigan. The building and its surrounding property were owned by Group Eight Technology. As Group Eight's fire insurance carrier on the Wyandotte property, Employers was obligated to guarantee payment for the damage caused by the fire.

Following the fire, Employers and Group Eight discussed the removal of debris from the Wyandotte property, including the disposal of several transformers and their fluids. The fluids contained polychlorinated biphenyls ("PCBs"). Group Eight hired a contractor to perform the demolition work on the Wyandotte property. The contractor, with Group Eight's authorization, hired K & D Industries Services to perform the removal and disposal of the transformer fluids.

In February of 1989, after repeated delays, the contractor met with Employers representative Howard Aidenbaum to discuss the removal and disposal of the transformer fluids. At the meeting, Aidenbaum learned of K & D's possible role in the clean-up and requested a cost estimate from K & D for the work.

On April 5, 1989, Employers agreed that the price quoted by K & D was acceptable. Employers also agreed to reimburse Group Eight for K & D's work at the Wyandotte property.

On April 15, 1989, K & D transported the transformer fluids from the Wyandotte property to an oil recycling facility owned by the CIW Company in Romulus, Michigan. CIW placed the fluids in its process tanks for recycling. On April 28, 1989, Employers reimbursed Group Eight for the work performed by K & D.

Shortly after K & D's disposal of the transformer fluids at the CIW site, the EPA learned that several of CIW's process tanks were contaminated with PCBs. Between April and September of 1989, EPA officials investigated the CIW site to determine who should be held responsible for the contamination. On September 11, 1989, by letter, the EPA notified Employers that it was a "potentially responsible party" ("PRP"). This designation meant that Employers was liable for the clean-up of the CIW site. The EPA made this liability determination based on its conclusion that Employers was a "covered

person" under CERCLA § 107(a)(3) (codified at 42 U.S.C. § 9607(a)(3)) who "arranged for" and was "involved in" the disposal of the transformer fluids. The September 11 letter required Employers to notify the EPA of its decision to participate in the clean-up, and it warned Employers that it could be made to pay the cost of clean-up undertaken by the EPA if Employers chose not to participate.

On November 28, 1989, the EPA issued an order pursuant to CERCLA § 106(a) (codified at 42 U.S.C. § 9606(a)) which directed Employers, CIW, K & D, and Group Eight to clean up the CIW site. Among other things, the EPA's order threatened Employers with fines and other penalties if it failed to clean up the CIW site. The order also provided Employers with an "opportunity to confer" with the EPA.

Employers requested an opportunity to confer with the EPA, and on December 21, 1989, Employers representatives met with EPA officials at the EPA's offices in Chicago, Illinois. The Employers representatives argued that Employers was improperly named as a PRP and should not have been ordered to clean up the CIW site. The EPA, however, limited discussion to implementation of the order.

On January 2, 1990, Employers submitted to the EPA written comments that contested the order as it applied to Employers. Employers also requested a hearing. The EPA refused Employers' request for a hearing and refused to reconsider its order.

Rather than risk potentially weighty fines—of up to $25,000 per day—Employers performed the clean-up as ordered. Then, pursuant to CERCLA § 106(b)(2) (codified at 42 U.S.C. § 9606(b)(2)), Employers filed a petition with the EPA in which it asked to be reimbursed for the costs it incurred in the clean-up. The EPA denied Employers' petition. Employers then challenged the EPA's denial by filing suit in federal district court pursuant to 42 U.S.C. § 9606(b)(2). Employers also filed this FTCA case in an attempt to recover money for the EPA's allegedly tortious activity.

Employers alleges that the EPA committed three torts against it: malicious prosecution, abuse of process, and negligence. Employers contends that the United States, through the EPA, acted maliciously, arbitrarily, and for an improper purpose when it initiated administrative proceedings against Employers in connection with the CIW site. Employers also alleges that the United States breached its duty of care to Employers when the EPA determined that Employers was liable under CERCLA.

## II.

The FTCA, as a general matter, allows persons to sue the federal government when an employee of the federal government injures that person while acting in the scope of the employee's employment, either negligently, or by some wrongful act. 28 U.S.C. § 1346(b). The FTCA creates liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* In this regard, the FTCA waives the federal government's sovereign immunity as it generally authorizes suits against the United States. *Berkovitz v. United States,* 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988).

There are, however, a number of exceptions to the FTCA's waiver of federal sovereign immunity. At least one, 28 U.S.C. § 2680(a), is both relevant to and dispositive of Employers' FTCA case. Section 2680(a) provides that the provisions of the FTCA, including 28 U.S.C. § 1346(b), shall not apply to:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception to section 1346(b) covers acts that are discretionary in nature—that is, acts that involve

choice, judgment, or considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959. When Congress delegates authority to an Executive Branch agency, like the EPA, to implement the general provisions of a regulatory statute, decisions made by officials of the agency are protected from tort liability. *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274; *United States v. Varig Airlines*, 467 U.S. 797, 819–20, 104 S.Ct. 2755, 2767–68, 81 L.Ed.2d 660 (1984). The discretionary function exception to the FTCA bars such actions. *Hylin v. United States*, 755 F.2d 551, 553 (7th Cir.1985).

When it enacted CERCLA, Congress delegated to the President and, through him, the EPA discretion to arrange for the removal and disposal of hazardous substances like the PCBs that polluted the CIW facility in this case. *See* 42 U.S.C. §§ 9604(a), 9604(e), 9606(a), 9606(b), 9607(a)(3), and 9615. CERCLA authorizes the EPA to take any remedial action or response that it deems necessary to protect the public health and welfare and the environment from hazardous substances. 42 U.S.C. §§ 9604(a) & 9606(a). This includes the authority to issue compliance orders and, when a person or party fails to comply with an EPA order, fines. 42 U.S.C. §§ 9604(e), 9606(a), and 9606(b)(1).

The action challenged by Employers in this case is just the sort of discretionary activity protected by section 2680(a).

CERCLA provides an avenue for Employers to recover its costs—an action for reimbursement in the district court. 42 U.S.C. § 9606(b)(2). This activity, as the Supreme Court noted in *Varig Airlines*, is "discretionary regulatory activity of the most basic kind." *Varig Airlines*, 467 U.S. at 819–20, 104 S.Ct. at 2767.

Employers cannot challenge the EPA's decision by bringing an action in tort pursuant to the FTCA, even if, as Employers alleges, the EPA acted negligently or abused its discretion. *Boruski v. United States*, 803 F.2d 1421, 1428 (7th Cir.1986); *Cisco v. United States*, 768 F.2d 788, 789 (7th Cir.1985). CERCLA provides a potential remedy for Employers in the form of an action for reim-

bursement of its costs pursuant to 42 U.S.C. § 9606(b)(2). Section 2680(a) does not allow Employers to maintain its FTCA claim against the United States. The district court's decision to dismiss Employers' case for lack of subject matter jurisdiction is therefore

AFFIRMED.