**GENERAL DYNAMICS CORPORATION,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

No. 96–55821.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1997.

Decided March 27, 1998.

Daniel R. Unumb, Torts Branch, Civil Division, and Mark B. Stern and Thomas M. Bondy, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for defendant–appellant.

Gregory S. Gallopoulos, Linda L. Listrom, Jenner & Block, Chicago, IL, and William E. Ireland, Haight, Brown & Bonesteel, Santa Monica, CA, for plaintiff–appellee.

Before: O'SCANNLAIN, FERNANDEZ and THOMAS, Circuit Judges.

Opinion by Judge FERNANDEZ; Dissent by Judge O'SCANNLAIN.

FERNANDEZ, Circuit Judge:

General Dynamics Corporation brought this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), against the United States for the purpose of obtaining reimbursement of attorneys fees it expended in defending a fraud prosecution, and a related civil action. The United States claimed that, among other things, it was protected by the discretionary function exception to liability, but the district court agreed with General Dynamics and held the United States liable for damages in the amount of $25,880,752. The United States appealed, and we reverse and remand.

## BACKGROUND

In January of 1978, the Department of the Army awarded General Dynamics a contract to develop two prototypes for the Divisional Air Defense System (DIVAD Contract). The DIVAD Contract was, according to its explicit terms, a "firm fixed-price (best efforts)" contract. The Defense Contract Audit Agency, the auditing branch of the United States Department of Defense, audited General Dynamics as a part of a general program designed to verify compliance with defense contracts. The DCAA reported suspected labor mischarging by General Dynamics to the United States Naval Investigative Service and to the United States Department of Justice. The DCAA then continued its audit and on February 29, 1984, issued an audit report, which indicated that General Dynamics had fraudulently mischarged over $8,000,-000 of DIVAD Contract costs. That report was negligently prepared because the DCAA, unaccountably, failed to recognize, or seek information about, the vast difference between a firm fixed-price contract and a firm fixed-price (best efforts) contract.

Still, based at least in part on the DCAA's report, the DOJ sent General Dynamics a grand jury subpoena in which it sought documents relating to the DIVAD Contract. On that same day, General Dynamics received a copy of the DCAA's flawed audit report. An extensive investigation followed in which the DOJ subpoenaed millions of documents and interviewed numerous witnesses. Beyond that, General Dynamics' perspicacious attorneys met with the prosecutors and tried to explain the differences between the two types of contracts. The prosecutors, it seems, were not impressed and decided to plow ahead.

Thus, a grand jury returned an indictment against General Dynamics and four of its employees which charged them with conspiracy and the making of false statements to the United States. *See* 18 U.S.C. §§ 371, 1001. Unaccountably, the indictment charged that the contract was a firm fixed-price contract, and left out the limiting language "best efforts." Despite General Dynamics' continued emphasis on the latter language, the prosecution was vigorously pursued until, at last, the prosecutors obtained information from those who knew, gained an understanding of the significance of the differences, and forthrightly moved to voluntarily dismiss the indictment.

Fortunately for the cause of justice, General Dynamics and its employees could afford to keep fighting; unfortunately, it cost them a lot of money to do so. General Dynamics hoped to recover that money under the FTCA, so this action followed. The district court agreed that General Dynamics could recover, and the United States appealed.

## JURISDICTION AND STANDARDS OF REVIEW

In general, the district court has jurisdiction over FTCA cases pursuant to 28 U.S.C. § 1346(b). We have jurisdiction pursuant to 28 U.S.C. § 1291. Of course, whether jurisdiction is precluded by the discretionary function exception, 28 U.S.C. § 2680(a), is an important issue in this case. We will turn to it in due course.

■ Because it *is* a question of jurisdiction, "[w]e review the district court's determination of subject matter jurisdiction under the discretionary function exception de novo." *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir.1995). Similarly, we review questions of law de novo. *See, e.g., Twenty–Three Nineteen Creekside, Inc. v. Commissioner*, 59 F.3d 130, 131 (9th Cir. 1995), *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996). That includes questions of state law. *See In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

## DISCUSSION

■ The United States attacks the district court's judgment on many fronts. Among other things, it asserts that this action is barred by the discretionary function exception, which applies to prosecutors, and that under California law the action would be precluded by the statutory privilege for submitting information to prosecutors. While we hold that the former issue does, indeed, bar jurisdiction in this action, we will also allude to the latter issue because it bears a close resemblance to the discretionary function exception. Analogically, it supports our application of that exception to this case.

■ Under the FTCA, the United States may be held liable in tort "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). That waiver of sovereign immunity is subject to a number of exceptions. If an exception applies, sovereign immunity is not waived, and no subject matter jurisdiction exists. *See Sabow v. United States,* 93 F.3d 1445, 1451 (9th Cir. 1996). Jurisdiction does not exist when the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a); *see also Sabow,* 93 F.3d at 1451.

■ The Supreme Court has explained the two-step process that must be gone through for the purpose of determining whether the discretionary function bar applies to any given case. *See Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988). We have done the same. *See, e.g., Sabow,* 93 F.3d at 1451. We need not go through that detailed, and often difficult, analysis here because no one doubts that prosecutorial discretion is covered. As we have succinctly put it: "The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability." *Wright v. United States,* 719 F.2d 1032, 1035 (9th Cir.1983). *See also Gray v. Bell,* 712 F.2d 490, 513 (D.C.Cir.1983). The exercise of that discretion is by no means easy, and prosecutors do make mistakes. Regardless, in general a prosecution does not go forward, and defendants are not sucked into its vortex merely because a report of one kind or another has been given to the prosecutor. Indeed,

> [t]he prosecutor has a duty to measure the facts in the report by legal standards and decide whether they add up to probable cause to prosecute. The possibility of less than perfect investigative conduct on the part of the police is no doubt one reason the law requires an exercise of the prosecutor's informed discretion before the initiation of prosecution.

*Smiddy v. Varney,* 803 F.2d 1469, 1472 (9th Cir.1986), *modified on other grounds,* 811 F.2d 504 (9th Cir.1987).

General Dynamics does not really dispute these observations. It, instead, recognizes that it cannot succeed in an attack on that revetment and adopts the ancient tactic of attempting to circumvent it instead. That is, it seeks to posture its case as an attack on the DCAA rather than as an attack on the prosecutors. If it can do that, as the district court thought it could, it may enhance its claims of success immeasurably. But it cannot do it.

■ Courts are not required to, and should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack upon something the government has done. Thus, a party may choose to dub his claim as one for negligence when it is truly a claim for misrepresentation, for which jurisdiction is excluded. Courts need not accept the label. *See United States v. Neustadt,* 366 U.S. 696, 703, 81 S.Ct. 1294, 1299, 6 L.Ed.2d 614 (1961). Similarly, a party might choose to say that he is suing for infliction of emotional distress so that he can avoid the bar against slander claims. Again, the courts need not accept the label. *See Thomas–Lazear v. FBI,* 851 F.2d 1202, 1206–07 (9th Cir.1988); *see also Metz v. United States,* 788 F.2d 1528, 1535 (11th Cir.1986); *Enterprise Elec. Corp. v. United States,* 825 F.Supp. 983, 985 (M.D.Ala.1992).

We see no reason to accord amaranthine obeisance to a plaintiff's designation of targeted employees when we refuse to be bound by his choice of claim labels. We may take cognizance of the fact that a target has been selected for the purpose of evading the discretionary choice of the persons who actually caused the damage—here the prosecutors', who were pushing a criminal (and civil) attack upon General Dynamics and its employees. Were it otherwise, it would be a simple matter to bog down the government in a new litigation whenever the erstwhile defendant had been the victor. Prosecutors do not usually do all of their own investigation, so a victorious defendant could almost always argue that this or that report was negligently

prepared. We referred to that very problem in *Smiddy*, 803 F.2d at 1471, when we said that the exercise of prosecutorial judgment will usually insulate investigating officers from liability.

The same note was sounded by the Third Circuit when it turned back an action against the United States. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3rd Cir.) (en banc), *cert. denied*, 516 U.S. 806, 116 S.Ct. 49, 133 L.Ed.2d 15 (1995). In *Fisher Bros.*, the United States Food and Drug Administration received information from the United States Embassy in Chile that an anonymous caller had warned that fruit from Chile would be injected with cyanide. The FDA decided that that was a hoax. Then a second call came in, and the caller said that he had already injected some fruit. The FDA then took steps to see if there was any tainted fruit and a report was issued from an FDA laboratory, which said that a couple of grapes were tainted. Those results were not duplicated and no more tainted fruit was found. Based upon the information before him, including the allegedly negligently prepared report from the FDA's laboratory, the FDA Commissioner exercised his discretion to refuse entry of any Chilean fruit into this country, and to withdraw all Chilean fruit already in domestic distribution channels. That damaged the plaintiffs from whom the Commissioner had not requested information before he acted. *Id.* at 282–83. The plaintiffs chose not to attack the Commissioner's exercise of discretion; they hardly could. Instead, they attacked the work of the laboratory technicians. The Third Circuit noted that it was not required to "accept plaintiffs' *characterization* of" the facts and that plaintiffs could not "by the manner in which they draft their complaints, ... dictate that their claims are 'based upon' one government employee's actions and not another's." *Id.* at 286. It continued:

> The reality here is that the injuries of which the plaintiffs complain were caused by the Commissioner's decisions and, as a matter of law, their claims are therefore "based upon" those decisions. Any other view would defeat the purpose of the discretionary function exception. In situations like this where the injury complained of is caused by a regulatory policy decision, the fact of the matter is that there is no difference in the quality or quantity of the interference occasioned by judicial second guessing, whether the plaintiff purports to be attacking the data base on which the policy is founded or acknowledges outright that he or she is challenging the policy itself.

*Id.* As the court noted, decision makers do, of necessity, rely upon information from others, and the purpose of the discretionary function exception would be severely undercut if a plaintiff could adopt the simple expedient of attacking one or more of the people who supplied information to the decision maker. *Id.* at 286–87.

We recognize that if *Fisher Bros.* is read too broadly, the discretionary function exception could swallow up a large part of the FTCA itself. No doubt many actions within an agency pass through the hands of somebody with some discretion at some stage. We have previously made that very point. *See United Cook Inlet Drift Assoc. v. Trinidad Corp. (In re Glacier Bay)*, 71 F.3d 1447 (9th Cir.1995). In *Glacier Bay*, hydrographers had allegedly failed to follow required procedures when they collected data for the preparation of nautical charts for Cook Inlet. Their reports and data had to pass through the hands of reviewers before the charts were released. The former did not perform a discretionary function, but the latter did, although the extent of their discretion is not clear. *Id.* at 1449–50. We held that the intervention of the reviewers did not preclude an action for the negligence of the hydrographers. *Id.* at 1451. Rather, we said that we would make our inquiry as to each "specific actor." *Id.* Of course, the only information before the reviewers had to have been the hydrographic manuals coupled with the reports and data generated by the hydrographers, and the nautical charts themselves would reflect only that information, unless the reviewers sent the whole project back for some reason. That tight coupling between hydrographers, reviewers, charts, and results does show that there is a danger in allowing any slight discretionary component to cut off all acts of negligence within an agency. But if *Glacier Bay* is read too broadly, the specific acts or actions theory

could swallow up a large part of the discretionary function exception.

In other words, while *Glacier Bay* and *Fisher Bros.* seem to be in healthy tension, they are not in opposition unless one or the other is read in an overly broad fashion. *Glacier Bay* seeks to avoid the problem of expanding the discretionary function exception to the point that it overcomes the purposes of the FTCA, while *Fisher Bros.* seeks to avoid shrinking the exception to a mere formality, which redirects suits against the government from one named actor to another, but which has no real effect on the right to sue. We fully understand General Dynamics' argument that we could accept an asthenic exception and, thus, easily find a waiver of sovereign immunity because a lawsuit might still founder on the causation element of a claimed state tort. But that would elide what Congress has written, and we cannot wholly ignore causation concepts when a robust exercise of discretion intervenes between an alleged government wrongdoer and the harm suffered by a plaintiff. An attempt to go around the exception then amounts to an exercise in mislabeling and misdescription of the truly discretionary source of the injury.

Again, *Glacier Bay* and *Fisher Bros.* illustrate that nicely. In the former, little intervened between the hydrographers' wrongdoing and the injury to the plaintiff. That was not true in *Fisher Bros.* Whether the laboratory report indicated that two grapes had been tampered with, or not, the FDA Commissioner had to make a high level and far reaching discretionary decision based upon all of the information available to him. He had to decide whether he would stop the import of all fruit from Chile, or some, or none. The report was part of that decision, perhaps a significant part, but much more than a yes-no answer based upon that report was before the Commissioner for decision.

Similarly, there is no danger to the FTCA when a totally separate exercise of discretion stands between the generators of a report and the commencement of a prosecution. Prosecutors have access to a great deal of information beyond that submitted by any one agency, such as the DCAA. That was the case here. Indeed, the prosecutors could have had even more information if they had chosen to pursue it. Theirs was a broad based discretion which was independent of the DCAA in every sense of the word. Here the prosecution was clearly based upon the discretionary decisions of the prosecutors. Thus, the Third Circuit's wisdom in *Fisher Bros.* is applicable.

California has applied the same wise thinking when considering the scope of its judicial proceedings privilege.[1] *See* Cal. Civ.Code § 47. The courts have made it clear that the privilege applies to communications made to prosecutors, even when those are designed to prompt a prosecution, which has not yet commenced. *See Passman v. Torkan*, 34 Cal. App.4th 607, 619, 40 Cal.Rptr.2d 291, 299 (1995); *see also Lebbos v. State Bar of California*, 165 Cal.App.3d 656, 668, 211 Cal. Rptr. 847, 853 (1985). In *Block v. Sacramento Clinical Labs, Inc.*, 131 Cal.App.3d 386, 182 Cal.Rptr. 438 (1982), a plaintiff sought to circumvent that privilege by purporting to attack the preparer of a report for his own negligence, rather than for his transmittal of the report to a prosecutor, who then relied upon it. In other words, the plaintiff attempted the same kind of flanking maneuver that General Dynamics attempts here. The Court of Appeal was not impressed. It stated that despite plaintiff's assertions, the claim was not really for preparation of the report at all. It was for the communication of the report to the prosecutor. *Id.* at 392, 182 Cal.Rptr. at 442. "Whether the matter be characterized as the publication of a negligently prepared report or the negligent publication of the report," the wrong was in the publication, not in the preparation. *Id.* at 393, 182 Cal.Rptr. at 442. Any other approach would "substantially defeat the purpose of [the] privilege." *Id.* at 394, 182 Cal.Rptr. at 442. The same is true here. General Dynamics did not suffer an injury simply because the DCAA negligently prepared a report. It was the communication of that report to the prosecutors which can be

---

1. This privilege would by itself point unerringly toward reversal, if we had jurisdiction to decide the issue.

connected to the ultimate harm suffered by General Dynamics. But California protects that communication and "labeling the complaint as one for 'professional negligence,'" does not evade the protection given to citizens by California law. *Id.* at 388, 182 Cal. Rptr. at 439.

The explication of the tort of malicious prosecution in the Restatement subtends the same result. As the drafters explain:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer, is not liable under the rule stated in this Section [the malicious prosecution rule] even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

Restatement (Second) of Torts § 653 cmt. *g* (1977). Just so. The quoted material also demonstrates that what General Dynamics attempts here is not only an avoidance of the strictures of the discretionary function exception, but also nothing less than a direct assault on the whole citadel of prosecutorial discretion and the protection that discretion offers to citizens who communicate with prosecutors.[2]

■ When the threads of these insights are woven together, they manifest the principles which animate our decision. Where, as here, the harm actually flows from the prosecutor's exercise of discretion, an attempt to recharacterize the action as something else must fail. And there can be no doubt that the buck stopped at the prosecutors. True, they had a report from the DCAA, but the decision to prosecute was all their own. They were not required to prosecute, and were not forced to do so. Nothing prevented them from gathering further information before they proceeded. In fact, they gathered a great deal of information and even met with General Dynamics' redoubtable lawyers before the prosecution went forward. The prosecutors had the difference between firm fixed-price contracts and firm fixed-price (best efforts) contracts explained to them. They also knew that the DCAA had not explicated that difference in its report. Nothing stopped the prosecutors from investigating further by speaking to those who had negotiated the contract on behalf of the government. They alone chose not to do so. But there can be no doubt that the choices were, indeed, in the prosecutors' hands. They had the discretion to advance or resile. Advance they did, but "whether or not the discretion involved [was] abused," the United States cannot be sued under the Federal Tort Claims Act. 28 U.S.C. § 2680(a).[3]

## CONCLUSION

The actions taken against General Dynamics and its employees will not be recorded as the Department of Justice's finest hour, nor, considering the ultimate candid request for dismissal, was it the Department's darkest one. A mistake was made, but, because prosecutors do not have ichor in their veins, mistakes can be expected from time to time. Mistakes, however, do not necessarily equal governmental liability.

Perhaps the prosecutors should have listened to General Dynamics' lawyers; perhaps they should have done more of their own investigation and spoken to government employees who really knew what the contract meant; perhaps they were merely misled by the arcane differences between the phrase "firm fixed-price" and the phrase "firm fixed-price (best efforts)"; perhaps reasonable minds could, even today, differ about the true meaning of the contractual words. In any event, General Dynamics' troubles flowed di-

---

2. Of course, reporting citizens may be sued for malicious prosecution. General Dynamics wisely avoids claiming malicious prosecution because recovery would be barred if it did claim that. *See* 28 U.S.C. § 2680(h). It seeks to avoid that horn of its dilemma by saying that the DCAA's wrong was the less heinous wrong of negligence. But that impales it on the other horn of the dilemma.

3. If we had jurisdiction to decide the issue, we would agree with Judge O'Scannlain that General Dynamics' claim is time barred.

rectly from the prosecutors' exercise of discretion. The United States is immune from suit under the FTCA.

REVERSED and REMANDED, with directions to dismiss for lack of jurisdiction.

O'SCANNLAIN, Circuit Judge, dissenting in part.

Prosecutors are understandably enticed by the lure of the big fish. But when an unsubstantiated indictment can lead to the imposition of over $25,000,000 in attorney's fees on an innocent party without recompense, we should hope for—nay, we expect—more responsible conduct by the government, regardless how attractive the quarry.

Unfortunately for General Dynamics, the government failed to observe basic precautions. It conducted an investigation of the alleged defense-contract fraud which was either unconscionably inadequate at best or recklessly arrogant at worst. As former Assistant Attorney General William Weld frankly conceded, the Department of Justice ("DOJ") blindly relied upon the faulty interpretation of the contract that the Defense Contract Audit Agency ("DCAA") had provided:

> The audit of General Dynamics was predicated upon the DCAA's belief that the DIVAD contract was a firm fixed price contract which had specific, mandatory requirements. The audit report and the advice of DCAA personnel in connection therewith were critical to the prosecution's early understanding of the contract as a firm fixed price type.... *This understanding formed the premise upon which the entire investigation was conducted and the indictment presented to the grand jury.*

Securities Laws Enforcement and Defense Contractors: Joint Hearings Before the Subcomm. on Oversight and Investigations of the House Comm. on Energy and Commerce, and the Subcomm. on Criminal Justice of the House Comm. on the Judiciary, 100th Cong. 39 (1987) (statement of William Weld, Assis-

tant Attorney General, Criminal Division, U.S. Dept. of Justice) (emphasis added).

The government did not engage in a dispassionate, independent analysis of the DIVAD contract.[1] Had it done so—or had it simply given more careful analysis to General Dynamics's position *ab initio*—the DOJ would have realized quite clearly that the document at issue was not a "fixed-price" contract at all, but rather one of "best-efforts," the terms of which General Dynamics had completely satisfied. Too willing to discount the company's explanation as a mere post-hoc rationalization, the DOJ wrongfully pursued its ill-based prosecution for three-and-a-half years. That the Department is immune from suit in this case does not mean that it is also immune from criticism.

## I

Yet this case is not about finger-pointing. It is about the jurisdiction of the federal courts. We lack jurisdiction when a claim is "based upon the exercise or performance or the failure to ̇exercise of perform *a discretionary function.*" 28 U.S.C. § 2680(a) (emphasis added). As this court has previously recognized, "[t]he decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability." *Wright v. United States,* 719 F.2d 1032, 1035 (9th Cir.1983). The DOJ's misconduct, therefore, cannot be the basis for General Dynamics's cause of action. To that extent I agree with the court.

The misconduct of the DCAA, however, is a different story. Although the court holds that the DOJ's immunity shields the DCAA, I am unfortunately unable to join in such conclusion and therefore respectfully dissent as to that portion of the court's opinion. Were we deciding this case on a blank slate, I might see things differently. Indeed, I share my colleagues concern that, because "[p]rosecutors do not usually do all of their own investigation,'' a litigant could almost always resort to the argument "that this or

---

1. In fairness, Mr. Weld did eventually own up to the government's shortcomings. In testifying before Congress, he stated: "[B]ecause of the relatively limited function performed by DCAA, it is all the more important for the Justice Department to conduct, in essence, a *de novo* investigation and evaluation of the evidence." *Id.* at 50. Alas, too little, too late.

that report was negligently prepared," thereby "swallow[ing] up a large part of the discretionary function exemption." (Opinion at 2748, 2751). However, this is not an issue of first impression for our court, and we must decide General Dynamics's claim against the backdrop of precedent.

In *United Cook Inlet Drift Assoc. v. Trinidad Corp. (In re The Glacier Bay )*, 71 F.3d 1447 (1995), we held that a discretionary review of a negligent hydrographic report did *not* shield the drafters of that report from liability. *See id.* at 1451. The court held, in no uncertain terms:

Each separate action must be examined to determine whether the specific actor had discretion of a type Congress intended to shield.

*Id.* at 1451. My colleagues conclude that the discretionary reviewers in *Glacier Bay* did not have the "broad based discretion" that the DOJ had in this case. To them, it would seem, the distinction is a matter of degree. The DOJ was *more* independent than *Glacier Bay* 's hydrographic reviewers; it had *more* information on which to base its decision.

Although my colleagues are correct that this is a distinction, it is a distinction without a difference. The *Glacier Bay* court was unequivocal: "[T]he proper level of inquiry must be act by act.... [W]e must determine whether each person taking an allegedly negligent act had discretion." *Id.* There was no suggestion that the result depended at all on the *amount* of discretion possessed by reviewers. To the contrary, "[e]ven if [the hydrographic] reviewers had discretion to approve the final charts, such discretion would not shield allegedly negligent non-discretionary acts by [those who prepared the charts]." *Id.*

To be sure, there is reason to be skeptical of *Glacier Bay* 's reasoning, which could have the tendency to "bog down the government" and "elide what Congress has written." (Opinion at 1283, 1284–85). However, *Glacier Bay* 's net, as described by the panel that decided that case, is wide enough to encompass the DCAA's negligence. I am thus unable to join the court's application of discretionary-function immunity. The DCAA clearly was not immune.

## II

I nevertheless concur in the result because, in my view, General Dynamics's otherwise valid claim is time-barred. The Federal Tort Claims Act provides that a claim against the United States is barred unless the plaintiff presents it in writing to the appropriate federal agency within two years of accrual. *See* 28 U.S.C. § 2401(b). The claim accrues once the plaintiff knows of his injury and its cause, *see United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979); *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir.1986), irrespective of whether the plaintiff is also aware of the government's negligence or the full extent of the damages, *see Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360.

In this case, identifying the injury for which General Dynamics seeks relief is simple: the injury is the indictment. In defending itself against the erroneously premised indictment, General Dynamics spent over $25,000,000 in attorney's fees. Identifying the "cause" of this injury is a more complicated issue because, in fact, there were two causes attributable to the government: the DCAA's release of its audit report and the DOJ's conduct during the course of its inadequate investigation. However, of these two causes, only the former is actionable. We all agree that the other, the DOJ's misjudgment, is shielded by discretionary immunity. Therefore, the operative question for determining the accrual of General Dynamics's cause of action is just the following: When did the company know that the audit report was a cause of the indictment? The answer, it seems to me, is December 1985, the time of the indictment. Because the company did not file its administrative claim until over three years later, in March 1989, and because equitable tolling was unavailable, the claim was untimely.

### A

At the time of the indictment, General Dynamics knew that the DCAA's report was a cause of its injury. By then, it had already received the audit report, which notified the company that "[c]ertain of the matters addressed [therein were] currently under inves-

tigation by the Naval and Investigative Service and the Department of Justice." Also by that time, General Dynamics had made numerous written and oral appeals to the DOJ urging the Department to disregard the audit report and to acknowledge that the contract was one of "best efforts." Although the company might not have understood why the DOJ was confused despite the clear "best efforts" language in the contract, there can be no doubt that General Dynamics knew that the audit report was at the root of the problem, as is evidenced by its flurry of communications with the government. General Dynamics did not have to know the existence and extent of the DOJ's negligence, or even the DCAA's negligence, in order to file a claim based on the DCAA's report, *see Kubrick,* 444 U.S. at 123, 100 S.Ct. at 360; all it had to know was that the DCAA's report was a cause of its injury. It therefore seems clear that General Dynamics had sufficient knowledge at the time of the indictment in December 1985, and its claim accrued thereupon.

## B

The limitations period began to run immediately upon indictment. The district court abused its discretion by tolling the statute of limitations before the dismissal of the indictment. Equitable tolling is generally available only "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990). General Dynamics does not fall within either category. The company contends that filing its claim sooner than it did might have impeded its efforts to convince the government to dismiss the indictment, and also might have resulted in the suspension of its business with the government. Perhaps so, but the mere difficulty of such strategic choices does not authorize tolling; the government engaged in no "misconduct" during this period.

The district court also abused its discretion by tolling the statute of limitations after the dismissal of the indictment, during the period

of negotiations between the company and the government for reimbursement of attorney's fees. Because these negotiations in no way precluded General Dynamics from filing a tort challenge, they should not have been the basis for tolling the statute of limitations. Thus, the limitations period continued to run, and it expired prior to General Dynamics's filing of its administrative claim.

## III

*Glacier Bay* supports the district court's conclusion that the government was not immune in this case and should have reimbursed the $25,880,752 in resulting attorney's fees. Because General Dynamics's claim was time-barred, however, I must concur in the result of reversal.