**TRI–STATE HOSPITAL SUPPLY CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 00–01463(HHK).**

United States District Court, District of Columbia.

June 1, 2001.

John Maguire Dowd, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, for Plaintiff.

Lisa Sheri Goldfluss, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff Tri–State Hospital Supply Corporation ("Tri State") brings this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging that the United States Customs Service ("Customs") and the Department of Justice ("DOJ") engaged in a malicious prosecution and abuse of process in connection with their six-year investigation and prosecution of Tri–State. Before the court is the United States' motion to dismiss for lack of subject matter jurisdiction. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion should be granted in part.

## I. BACKGROUND

Tri–State is a Michigan corporation that sells hospital supplies throughout the United States.[1] In the early 1980s, Tri–State began importing surgical equipment from suppliers in Pakistan. Tri–State paid the invoices it received from its Pakistani suppliers, but also received rebates back from those suppliers. During the period 1984–1986, Tri–State consulted with its licensed customs broker, LEP International, Inc. ("LEP"), regarding the value of the imported supplies it should declare to Customs. LEP advised Tri–State to declare only the price that was reflected on the actual invoices accompanying the supplies. Tri–State did so, resulting in its declaring a higher invoice price to Customs as compared to the price it ultimately paid after deducting the rebates it received.

In 1994, Tri–State became the subject of civil and criminal investigations for allegedly falsifying forms submitted to the United States Customs Service. Customs officials executed a search warrant at Tri–State's headquarters and seized various evidence relating to the value of surgical instruments imported from Pakistan. Customs also issued a series of civil penalty notices based on allegations that Tri–State fraudulently overstated the prices it paid and engaged in an international money laundering scheme. In 1996, Customs referred its case to DOJ for the collection of the civil penalties, and DOJ officials brought suit against Tri–State in the United States Court of International Trade.

On several occasions before and during the enforcement trial, counsel for Tri–State explained to DOJ and Customs officials that it had relied upon the counsel of LEP in reporting the price of supplies it received from Pakistan. Evidence also emerged before and during the trial, which proved that Tri–State did not engage in any fraudulent scheme and that the Customs penalties were unwarranted. In addition, Customs and DOJ officials tried to collect penalties based on Customs entries that they knew were barred by the applicable statute of limitations. During the early stages of the trial, DOJ decided to dismiss its fraud claim against Tri–State, and the Court of International Trade granted Tri–State's motion for judgment

---

1. When deciding a motion to dismiss for lack of subject matter jurisdiction, the court must construe the complaint in the light most favorable to the plaintiff. *See, e.g., Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir. 1986) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). The court does so here.

as a matter of law on the gross negligence count. After the trial, the jury deliberated on the sole remaining negligence count and returned a no liability verdict in favor of Tri–State. This FTCA suit followed.

In Count I of the complaint, Tri–State alleges that the United States engaged in a malicious prosecution because it had no probable cause to issue penalty notices against Tri–State or to sue Tri–State for collection of those penalties in the Court of International Trade. Tri–State also contends that Customs officials knowingly violated their own regulations by seeking to impose civil penalties on the company. Count II alleges that the United States engaged in an abuse of process in connection with the penalty charges and enforcement trial. As a result of the conduct of Customs and DOJ officials, Tri–State incurred damages, including "$3,239,153.60 in attorneys' fees and associated costs." Compl. ¶ 13; *see also* Compl. ¶ 173; Prayer for Relief at 38.

## II. ANALYSIS

The United States contends that Tri–State's claims are jurisdictionally barred because the United States has not waived its sovereign immunity. Specifically, the United States claims that the alleged conduct of Customs and DOJ officials is immune from suit under the FTCA's malicious prosecution/abuse of process and discretionary function exceptions. The United States also argues that, in any event, the FTCA does not permit Tri–State to recover attorneys' fees it spent in defending itself against the United States' investigation and prosecution. Tri–State disagrees.

▉ The starting point of the court's analysis is to recognize that the United States is immune from suit absent an express waiver of sovereign immunity. *See United States v. Sherwood*, 312 U.S. 584,

586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). This waiver must define the terms of the United States' consent and establish the court's jurisdiction to entertain the suit. *See id.* Under the FTCA, the United States may be held liable "for injury or loss of property, or personal injury or death" caused by a government employee to the same extent that a private person would be held liable under like circumstances. 28 U.S.C. § 1346(b). However, the FTCA's waiver of sovereign immunity is subject to a number of exceptions. *See* 28 U.S.C. § 2680. If an exception applies, sovereign immunity is not waived, and the court has no subject matter jurisdiction over the case. *See Sloan v. United States Dep't of Housing and Urban Development*, 236 F.3d 756, 759 (D.C.Cir.2001).

## A. Malicious Prosecution/Abuse of Process Exception

The first exception raised in this case is the malicious prosecution/abuse of process exception. The FTCA explicitly excludes from its waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). However, the FTCA includes an "exception to this exception" for the torts of "investigative or law enforcement officers of the United States Government." *Id.* In other words, "claims of malicious prosecution and abuse of process can *only* arise from the conduct of 'investigative or law enforcement officers of the United States government.'" *Moore v. United States*, 213 F.3d 705, 708 (D.C.Cir.2000) (citing 28 U.S.C. § 2680(h)) (emphasis added). The statute defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence,

or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

■ The United States argues that all of Tri–State's claims, except those relating to Customs Senior Special Agent Bethel, are jurisdictionally barred under the malicious prosecution/abuse of process exception because only Agent Bethel can be classified as an investigative or law enforcement officer. The court disagrees. In ¶ 17 of its complaint, Tri State alleges that "at least 20 agents of the United States Customs Service … executed the search warrant at Tri State's headquarters." Assuming that those 20 agents had authority to execute the search, each of those 20 agents could be classified as an "investigative or law enforcement officer" under § 2680(h), and their conduct may serve as the basis of this suit.[2]

■■ The United States next argues that all of the other tortfeasors referenced in the complaint are DOJ attorneys and Customs administrative officials, who do not have the requisite authority to execute searches, seize evidence, or make arrests. The United States contends that because these individuals are not investigative or law enforcement officers under § 2680(h), their conduct may not serve as the predicate for Tri–State's malicious prosecution/abuse of process claims. The United States is partially correct. With respect to the DOJ prosecutors referenced in the complaint, it is well-established that the

conduct of these officials may *not* serve as the basis for a malicious prosecution and abuse of process claim against the United States. These prosecutors were not investigative or law enforcement officers as defined by § 2680(h), and there is generally no waiver of sovereign immunity for their actions. *See Moore,* 213 F.3d at 709–10 (affirming dismissal of claims against federal prosecutor); *Dellums v. Powell,* 660 F.2d 802, 805–07 (D.C.Cir.1981) (holding that a prosecutorial official could not be held liable for causing a prosecution to be brought).[3] After reviewing each allegation in the complaint, the court concludes that none of the claims involving federal prosecutors may serve as the basis of this malicious prosecution/abuse of process suit. This means that Tri–State may not seek redress for any of the alleged conduct the United States Attorney or DOJ prosecutors engaged in before or during the prosecution of Tri–State. Moreover, the court will not entertain skillful attempts to recharacterize the conduct of these prosecutors as those of Customs officials. *See, e.g., General Dynamics Corp. v. United States,* 139 F.3d 1280, 1283–86 (9th Cir. 1998) ("Where, as here, the harm actually flows from the prosecutor's exercise of discretion, an attempt to recharacterize the action as something else must fail.").

■ With respect to the Customs officials referenced in the complaint, the court

---

**2.** In its opposition to the motion to dismiss, Tri–State contends that Customs Special Agent Jennifer Gibbs was one of the 20 agents who participated in the search of Tri–State's offices. Assuming that Agent Gibbs had authority to execute that search, and in fact she did so, she too could be classified as an "investigative or law enforcement officer" under § 2680(h). Compl. ¶¶ 16–22.

**3.** In addition, the conduct of the DOJ prosecutors here is protected under the discretionary function exception. *See Sloan v. United*

States Dep't of Housing and Urban Development, 236 F.3d 756, 760 (D.C.Cir.2001) ("The decision to initiate a prosecution has long been regarded as a classic discretionary function."); *Gray v. Bell,* 712 F.2d 490, 513 (D.C.Cir.1983) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of government discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception.").

concludes that these officials may be considered "investigative or law enforcement officers" under § 2680(h) and, therefore, Tri–State's claims based on their actions are not barred by the malicious prosecution/abuse of process exception. Tri–State specifically cites Customs Port Director Jon Batt, Customs Penalties Officers Robert Pisani and Helen Salamon, and Customs Chief Penalties Officer Charles Ressin as officials who were all involved in the investigation of Tri–State. And, as Tri–State observes, 19 C.F.R. § 162.75(a) and (d) authorize these Customs officials to seize and return evidence respectively if there is "reasonable cause to believe that a person has violated [a federal statute]." 19 C.F.R. § 162.75(a). This authority provides a sufficient basis for classifying these Customs officials as investigative or law enforcement officers under § 2680(h).

■ But the fact that these officials may be classified as law enforcement officers does not end the court's inquiry. The malicious prosecution/abuse of process exception may still apply (and there would be no waiver of sovereign immunity) if the Customs officials committed wrongdoing outside the context of their investigatory or law enforcement duties. Citing *Murphy v. United States*, 121 F.Supp.2d 21, 24–26 (D.D.C.2000), for support, the United States argues that there is no waiver of sovereign immunity in this case because the Customs officials were not engaged in the specific conduct for which they have law enforcement authority.

■ In *Murphy*, a secret service agent brought an FTCA assault claim against the government based on a workplace incident involving his supervisor.[4] The United States moved to dismiss the claim, arguing that the supervisor—though classified as a law enforcement officer under § 2680(h)—was not engaged in law enforcement duties when he assaulted his colleague. After reviewing the few cases addressing this subject, Judge Robertson of this court reasoned that "lawsuits could proceed against the government—even if the tortfeasor were not engaged in one of [§ 2680(h)'s] three enumerated law enforcement activities—so long as the alleged wrongdoing took place in the context of law enforcement activity." *Murphy*, 121 F.Supp.2d at 25 (referencing *Employers Ins. of Wausau v. United States*, 815 F.Supp. 255, 259 (N.D.Ill.), *aff'd*, 27 F.3d 245 (7th Cir.1994)). Judge Robertson ultimately dismissed the complaint for lack of subject matter jurisdiction because he concluded that the alleged assault did not take place in the context of law enforcement activity. *See Murphy*, 121 F.Supp.2d at 25.

This court agrees with Judge Robertson's analysis. The facts of the present case are readily distinguishable from those in *Murphy*, however. First, unlike in *Murphy*, Tri State's complaint can be read to allege a direct link between the Customs officers' investigatory duties and their alleged wrongdoing. Second, under the tort of malicious prosecution, the United States may indeed be liable for the conduct of investigatory officials who "procure" criminal proceedings. *See Moore v. United States*, 213 F.3d 705, 710 (D.C.Cir. 2000) (holding that to procure a prosecution there must be a clear "chain of causation" linking the individual's actions with the initiation of criminal proceedings). For these reasons, the court concludes that the malicious prosecution/abuse of process exception does not shelter the con-

---

4. Under the FTCA, the claim of assault is like that of malicious prosecution and abuse of process. Claims of assault can *only* arise from the conduct of investigative or law en-

forcement officers of the United States government. *Cf. Moore v. United States*, 213 F.3d 705, 708 (D.C.Cir.2000).

duct of the Customs' officials referenced in the complaint.

## B. Discretionary Function Exception

Next, the United States argues that the conduct of Customs officers is shielded from liability under the discretionary function exception.[5] *See* 28 U.S.C. § 2680(a). This exception precludes claims against the United States that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused." *Id.*

▆▆▆ To determine whether the discretionary function exception applies, the court must engage in a two-part analysis. First, the court must determine whether the challenged conduct involves "an element of judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (citing *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). This "requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267 (internal citations omitted); *Sloan v. United States Dep't of Housing and Urban Development,* 236 F.3d 756, 759 (D.C.Cir.2001). Second, if the conduct involves some element of judgment or choice, the court must determine whether the conduct implements social, economic, or political policy considerations. *See Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267; *United States v. S.A. Empresa de*

*Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). When a statute or regulation allows a federal agent to act with discretion, there is a "strong presumption" that the authorized act is based on an underlying policy decision. *Gaubert,* 499 U.S. at 324, 111 S.Ct. 1267. As with the other FTCA exceptions, if the discretionary function exception applies, the district court lacks subject matter jurisdiction over the case. *See Sloan,* 236 F.3d at 759.

The United States contends that the alleged conduct of Customs officials in this case involved discretionary judgments protected under § 2680(a). The United States specifically references Agent Bethel's alleged failure to contact certain employees of Tri–State's customs broker as the type of investigatory decision that involves choice and judgment. In response, Tri–State points to various acts of Customs officials, which it believes do not qualify as discretionary conduct. These acts include falsifying statements in order to bring about a prosecution (Compl.¶¶ 119–20); violating mandatory Customs regulations that require claims barred by the statute of limitations or lacking essential elements to be dismissed (Compl.¶¶ 109–14, 141–48, 169–71); and pursuing penalty claims without properly investigating the underlying penalty charges (Compl.¶¶ 169–71).

▆▆ The court's first task is to determine whether these alleged acts involve an element of judgment or choice. *See Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. With respect to Tri–State's claims that Customs officials falsified records and lied to bring about a prosecution, Compl.

---

**5.** The United States raises the discretionary function exception only as to the conduct of Customs Senior Special Agent Bethel. But given the court's ruling that Agent Bethel is not the sole "investigative or law enforcement officer" alleged in the complaint, 28 U.S.C. § 2680(h), the court will assume that the United States raises the discretionary function exception as to all investigative or law enforcement officers named therein.

¶¶ 119–20, Customs officials—like every other individual—enjoy no discretion in this area. It is well-established that "[a]ny person called to testify . . . whether or not a government official, is under a legal duty to testify truthfully under oath." *Heywood v. United States*, 585 F.Supp. 590, 592 (D.Mass.1984); *see also Crow v. United States*, 634 F.Supp. 1085, 1090 (D.Kan. 1986). Lying under oath to preserve barred claims is not a protected act under the discretionary function exception. Likewise, the other conduct Tri–State alleges—violating mandatory Customs regulations—appears unprotected by the discretionary function exception. Tri–State alleges that Customs officials violated 19 C.F.R. Pt. 171, App. B(D)(5) & (6) when they failed to dismiss the Customs penalty claims because of unestablished elements and statute of limitations concerns. Those regulations state:

> (5) *Cancellation of Claim.* The Fines, Penalties, and Forfeitures Officer *shall* cancel a claim for monetary penalty whenever it is determined that an essential element of the violation has not been established by the available evidence.

> (6) *Remission of Claim.* If, following consultation with the Chief Counsel representative in the field, the Fines, Penalties, and Forfeitures Officer determines by clear and convincing evidence that the statute of limitations would be available as a defense to enforcement of a claim for monetary penalty, then the Fines, Penalties, and Forfeitures Officer *shall* remit such claim, if it is within his authority as provided in § 171.21, Customs Regulations (19 C.F.R. § 171.21).

19 C.F.R. Pt. 171, App. B(D)(5) and (6) (emphasis added). The regulations' use of the word "shall" is significant in that it provides the officials with no discretion in this area. *See Berkovitz*, 486 U.S. at 542–43, 108 S.Ct. 1954.

Assuming that Customs officials failed to comply with these mandatory regulations, the United States may not rely on the discretionary function exception to shield it from liability under the FTCA. *See Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267 (holding that the "requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow"). Tri–State has sufficiently referenced conduct on the part of Customs officials that does not involve an element of judgment and choice. Consequently, such conduct cannot be considered discretionary, and the United States may be held liable for those acts.[6]

## C. Request for Attorneys' Fees and Expenses

Finally, the United States moves to dismiss on the grounds that Tri–State's request for attorneys' fees and expenses is jurisdictionally barred under the FTCA. The United States claims that the FTCA does not waive the government's sovereign immunity to permit an award of attorneys' fees and that the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provides the exclusive remedy for such claims. Tri–State disputes these arguments, noting that EAJA is a separate statutory scheme not applicable in this case and that the United States is liable for attorneys' fees under the FTCA just as any private

---

**6.** There may be other conduct by Customs officials—such as their initiation of administrative proceedings against Tri–State—that is protected by the discretionary function exception. *See, e.g., Sloan v. United States Dep't of Housing and Urban Development*, 236 F.3d 756, 760–61 (D.C.Cir.2001). The court makes no ruling on such acts, however, because the United States has not briefed the issue.

individual would be liable under like circumstances.

 The court's analysis again begins with the well-established proposition that waivers of sovereign immunity must be construed strictly in favor of the sovereign. *See United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Relying on this doctrine, the Supreme Court has held that the United States is immune from claims of attorneys' fees except to the extent that it has specifically waived its immunity for such awards. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 267–68, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). This court must, therefore, review the plain language of the FTCA to determine whether that statute contains an express waiver for the attorneys' fees Tri–State seeks. The court concludes that it does not. The FTCA permits recovery only "for injury or loss of property, or personal injury or death." 28 U.S.C. § 1346(b). The FTCA's only mention of attorneys' fees is a provision that limits the contingency fee arrangement an attorney can charge for FTCA cases. *See* 28 U.S.C. § 2678.

Our Court of Appeals has not addressed this issue, but other appellate courts have ruled that attorneys' fees are not recoverable under the FTCA. *See Anderson v. United States,* 127 F.3d 1190, 1191–92 (9th Cir.1997) ("Congress has not waived the government's sovereign immunity for attorneys' fees and expenses under the FTCA."), *cert. denied,* 523 U.S. 1072, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998); *Joe v. United States,* 772 F.2d 1535, 1537 (11th Cir.1985) (*per curiam* ) ("The FTCA does not contain the express waiver of sovereign immunity necessary to permit a court to award attorneys' fees against the United States directly under that act."). The *Anderson* and *Joe* cases both involved an award of attorneys' fees to a prevailing plaintiff in a FTCA suit. While the posture of the present case is significantly different—Tri-State does not seek attorneys' fees for bringing this FTCA suit, rather it seeks past attorneys' fees expended in defending itself against the government's six-year malicious prosecution—the result must be the same. The FTCA does not provide an express waiver of sovereign immunity for attorneys fees in either case.

 Tri–State seeks to overcome the absence of an express waiver of sovereign immunity necessary to permit the recovery of attorneys fees by characterizing the $3,239,153.60 in attorneys' fees it seeks as Tri–State's "money damages . . . for injury or loss of property." Pl.'s Opp. to Def.'s Mot. to Dismiss at 36 (citing FTCA, 28 U.S.C. § 1346(b)). This approach must be rejected. Courts are never bound by the specific labels a party attaches to its complaint, and parties cannot use artful pleading to circumvent the limitations of a statute or to suggest that they are seeking one thing when they are really asking for another. *See, e.g., Brown v. GSA,* 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."); *General Dynamics Corp. v. United States,* 139 F.3d 1280, 1283 (9th Cir.1998) (same). This is especially true when the United States' waiver of sovereign immunity is involved. *See United States v. Neustadt,* 366 U.S. 696, 703, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) (noting that courts must "look beyond the literal meaning of the language to ascertain the real cause of complaint") (citations omitted).

Nonetheless, Tri–State contends that the United States should be held liable for

attorneys' fees because a private individual would be liable under District of Columbia law. Tri–State cites two local District of Columbia cases that authorize an award of attorneys' fees as the measure of damages for the tort of malicious prosecution. *See, e.g., Weisman v. Middleton,* 390 A.2d 996, 999 (D.C.1978); *Jemison v. National Baptist Convention, USA, Inc.,* 720 A.2d 275, 287 n. 12 (D.C.1998). There is some support for Tri–State's position. *See* 28 U.S.C. § 2674 (noting that under the FTCA the government is liable "in the same manner and to the same extent as a private individual under like circumstances"). However, an award of attorneys' fees under local law cannot overcome the absence of an express waiver of the United States' sovereign immunity for such awards. *See Anderson,* 127 F.3d at 1191. This court agrees with the reasoning of the Ninth Circuit that waivers of sovereign immunity should be "construed narrowly so that the government is *never* liable for a plaintiff's attorney fees, even if the local substantive law permits recovery of fees against a private individual in like circumstances." *Id.* (emphasis added) (citing *Jackson v. United States,* 881 F.2d 707, 712 (9th Cir.1989)). Moreover, Tri–State cites no cases, and the court is aware of none, in which attorneys' fees were awarded in a malicious prosecution or abuse of process action brought under the FTCA.[7] This court will not be the first.

The court's analysis is further supported by the fact that Congress established the Equal Access to Justice Act as a separate statutory scheme that specifically waives the government's sovereign immunity for awards of attorneys' fees. *See* 28 U.S.C. § 2412(b). EAJA is a more narrowly-tailored expression of Congress' intent regarding such awards, specifying the particular parties and the particular circumstances in which attorneys' fees against the United States are available. Moreover, EAJA appears to address the relief that Tri–State wants-reimbursement for defending itself against the government's bad faith or substantially unjustified position at trial. *See, e.g., Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (noting that the position of the government must be substantially justified); *American Hospital Ass'n v. Sullivan,* 938 F.2d 216, 219 (D.C.Cir.1991) (noting that under EAJA the government may be liable for acting in bad faith). In *Brown v. GSA,* 425 U.S. 820, 834–35, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court stated the general proposition that a precisely drawn, detailed statute pre-empts more general remedies. *See id.* Applying this principle here, the court will not imply the availability of attorneys' fees under the more general FTCA, when the more-precisely drawn EAJA appears to express Congress's clear mandate concerning the issue. *Cf. United States v. Demko,* 385 U.S. 149, 152–54, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) (barring FTCA suit on the grounds that another compensation statute provided specific and exclusive redress for injury); *American*

---

**7.** One possible caveat is *General Dynamics Corp. v. United States,* 1996 WL 200255 (C.D.Cal.1996). There the plaintiff brought a FTCA negligence claim against the United States and sought reimbursement for attorneys' fees it incurred in defending a fraud prosecution and related civil action. The district court awarded the requested attorneys' fees, but the Ninth Circuit reversed, holding that the discretionary function exception applied to preclude the court's subject matter jurisdiction. *See General Dynamics Corp. v. United States,* 139 F.3d 1280, 1283 (9th Cir. 1998). The appellate court did not address whether attorneys' fees were available under the FTCA, but it noted that its decision to dismiss the case on jurisdictional grounds would have been the same if plaintiff had brought a malicious prosecution claim. *See id.* at 1286 n. 2.

*Postal Workers Union, AFL CIO v. United States Postal Service*, 940 F.2d 704, 709 (D.C.Cir.1991) (affirming dismissal of FTCA retaliatory harassment claim because a more remedial statute provided relief). The court also will not address whether Tri–State *could* have qualified for attorneys' fees under EAJA, given that Tri–State chose not to bring its claims under that statute.[8]

Still, all may not be lost for Tri–State. Tri–State's complaint asserts that Tri–State incurred "special injury *including but not limited* to $3,239,153.60 in damages." Compl. ¶ 173 (emphasis added). Though Tri–State may not recover the "$3,239,153.60 in attorneys' fees and associated costs" under the FTCA, Compl. ¶ 13, it may have the opportunity to show what other "special injury" it suffered. Compl. ¶ 173. Tri–State, however, must move to amend its complaint to clarify what "special injury" it alleges it suffered as a result of the United States' actions. *Id.* This additional information is necessary to comply with Fed.R.Civ.P. 8(a) which requires, *inter alia*, that a claimant show that "the pleader is entitled to relief."

### III. CONCLUSION

For the foregoing reasons, it is this 1st day of June, 2001, hereby

**ORDERED** that the United States' motion to dismiss for lack of subject matter jurisdiction is granted in part; and it is further

**ORDERED** that by no later than June 22, 2001, Tri–State shall move to amend its complaint to include a more specific statement of the "special injury" it allegedly suffered.

---

8. However, the court will note that there are certain procedural requirements that Tri–State must satisfy before it is eligible for attorneys' fees under EAJA. *See* 28 U.S.C. § 2412(d)(1)(B) (30–day filing requirement) and (d)(2)(B) (financial eligibility requirements). At oral argument, Tri–State stated that it did not meet those criteria. The court will not allow Tri–State to circumvent express statutory requirements it does not meet by seeking the same relief under a different, more general statute. *See, e.g., United States v. Neustadt*, 366 U.S. 696, 703, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) (citing such practice with disapproval); *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 940 F.2d 704, 709 (D.C.Cir.1991) (same).