**CHARLES BURTON BUILDERS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. MJG–89–1428.

United States District Court, D. Maryland.

July 8, 1991.

Jerry Stouck, Spriggs & Hollingsworth, Washington, D.C., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Richard D. Bennett, U.S. Atty. for Md., Baltimore, Md., J. Patrick Glynn, Director, and Erin L. Scally, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Charles F. Flynn, Asst. U.S. Atty., Baltimore, Md., for defendant.

## DECISION

GARBIS, District Judge.

### BACKGROUND

On April 5, 1984, the United States Coast Guard awarded a contract to Charles E. Lanier ("Lanier"). The contract required Lanier to remove and dispose of approximately 8,022 used shorelight and buoy batteries stored in a U.S. Coast Guard facility. The batteries contained hazardous substances. Lanier, an unlicensed contractor, removed the batteries for the Coast Guard and disposed of them in his own vacant lot, the "Lanier farm" located at 10800 Frank Tippett Road, Cheltenham, Maryland. The disposal constituted a violation of Md. Health–Envtl.Code.Ann. § 7–253(4) (1987).

The Lanier farm happened to be immediately adjacent to property owned by Plaintiff, Charles Burton Builders, Inc. ("CBB"). At the time of the dumping CBB was in the process of developing its property for residential housing. Later, CBB learned of the illegal dumping from a newspaper article in The Washington Post. CBB halted its de-velopment project and hired ATEC Associates, Inc. ("ATEC"), an environmental consulting firm, to determine whether Lanier's conduct in burying the batteries had caused environmental harm to CBB's property. ATEC concluded that while there were elevated levels of lead on CBB's land, this was not attributable to any substances dumped on the adjacent Lanier farm. A later study commissioned by the Coast Guard reached the same results.

In this case the illegal dumping by the Coast Guard contractor caused no physical damage to Plaintiff's property. However, it is assumed for purposes of the pending action that, as a result of the illegal dumping, Plaintiff incurred expenses for testing to determine whether there had been any such damage and also sustained damages due to a consequential delay in its development project.

CBB has timely filed an administrative complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), seeking recovery of $18,969.25 for environmental assessments and consulting services done by ATEC. CBB also claimed an additional $5,269.95 for costs which were directly caused by the illegal dumping. After the Coast Guard denied the claim, the Plaintiffs timely filed this action under the FTCA.

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

As stated by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Of course, when considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). As to cross motions for summary judgment, the same evidence might be viewed differently depending upon which party's motion is being evaluated.

SUBSTANTIVE DISCUSSION

 The Federal Tort Claims Act, 28 U.S.C. § 1346, constitutes a waiver of the United States Government's traditional shield of sovereign immunity. Section 1346(b) provides in pertinent part:

> Subject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, *for money damages ... for injury or loss of property* ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.* (emphasis added).

In brief, in this case, the Government can be held liable to the same extent as a private person subject to Maryland law only *"for money damages ... for injury or loss of property."*

The parties have, understandably, devoted considerable effort to briefing the question of whether a hypothetical private person subject to Maryland law would be liable to the Plaintiff in the circumstances here presented. The Court will assume, for purposes of this discussion, that the Plaintiff's position is correct. Therefore, it is assumed that had a private corporation entered into the subject contract with Lanier, under Maryland law CBB would be entitled to recover from the private corporation any damages sustained by virtue of Lanier's actions.

On the basis of the foregoing assumption, the Court must focus on the narrow question of whether CBB's action is for "injury or loss of property" within the meaning of the FTCA, 28 U.S.C. § 1346(b). If CBB did not in fact sustain any "injury or loss of property" the case would fall outside of the waiver of sovereign immunity contained in the FTCA and would have to be dismissed for lack of jurisdiction. *See Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

The parties, and the Court, have found only a few precedents defining the term "injury or loss of property." While none is precisely on point, all indicate that in order to be covered by the FTCA there must have been a physical impact of some type on the plaintiff or its property. A claim for damages sustained only in reaction to governmental activity, even though possibly cognizable under state law, does not constitute an action for money damages for "injury or loss of property."

In *California v. United States,* 307 F.2d 941 (9th Cir.1962), alleged negligence on the part of the Government caused a fire which spread to other property causing the Plaintiff to expend funds fighting the fire. It should be noted that the case did not involve claims of the property owners who, presumably, did sustain an "injury or loss of property." *See Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (suit permitted by owners of destroyed property). The question presented in *California* was:

> [W]hether suit [under the FTCA] may be brought against the United States upon a claim for recovery of expenses incurred by a State agency in suppressing a fire

negligently set and allowed to escape to private property....

307 F.2d at 943.

The Ninth Circuit held in *California* that there was no jurisdiction over FTCA claims unless the Plaintiff sustained an "injury or loss of property" and that expenses incurred in reaction to the fire did not qualify. *See also Oregon v. United States*, 308 F.2d 568 (9th Cir.1962) and *Idaho v. United States Dept. of the Army*, 666 F.2d 444 (9th Cir.1982) (two other Ninth Circuit fire cases holding that "reaction expenses" or "response costs" do not qualify as "injury or loss to property").

The Ninth Circuit precedent cited above is refuted by no authority brought to the attention of this Court. As noted in 1962 in the decision in *California*, 307 F.2d at 944: "[W]e are unable to find a single instance in the history of litigation involving the Tort Claims Act where recovery was permitted in the absence of injury to person or property." Even today, it appears that all existing authority is consistent with these holdings and the concept that a plaintiff cannot recover under the FTCA for indirect claims or "response" costs of the type asserted here.

Plaintiff's efforts to distinguish or avoid the precedents are unpersuasive. For example, Plaintiff attempts to distinguish the fire cases from the instant case by erroneously stating that in those cases there had been no violation of a state statute. This is incorrect. For example, in *Oregon*, a statute expressly authorized a cause of action in tort against the party at fault for the fire even though the plaintiff did not suffer any property damage. Oregon Rev.Stat. § 477.002–477.071 (1972). *See Oregon*, 308 F.2d at 569. However, even if the fire cases did not include one with a statutory violation, the distinction would be irrelevant.

Further, Plaintiff contends that because the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9611, specifically allows recovery for "response costs," such as the investigation and cleanup of environmental harms, by analogy a cause of action

for such items should be allowed under the FTCA. The Court does not fathom the basis upon which it could properly inject a cause of action from a specific statute into a general one. Indeed, if reference to CERCLA is pertinent at all, it tends to support the position that Congress recognized there to be a need for a specific cause of action for "reaction expenses" or "response costs" due to the absence of a right to recover under the existing law.

Finally, Plaintiff attempts to rely on Maryland law to show that the kind of economic harm suffered by the plaintiff is "property damage" or "loss of property" within the meaning of the statute. However, whatever may be the result of a semantic exercise with the law of Maryland, it is federal and not state law which governs the interpretation of the FTCA. Hence, even if Maryland law would, for some or all purposes, consider Plaintiff's claim to be for "injury or loss of property," it is absolutely clear that federal law would not.

The Court is, of course, sympathetic with the plight of the Plaintiff which, if its factual allegations are true, has sustained an economic detriment as a result of negligence attributable to the Government. However, the Court must conclude that Plaintiff's claim is not for money damages for "injury or loss of property" within the meaning of the Federal Tort Claims Act. Accordingly, the Court lacks jurisdiction over Plaintiff's claim.

For the foregoing reasons, summary judgment is GRANTED to Defendant.