Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 10, 2003      Decided September 2, 2003

No. 02-5045

TRI–STATE HOSPITAL SUPPLY CORPORATION,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01463)

*Terence J. Lynam* argued the cause for the appellant. *John M. Dowd* and *Joseph P. Esposito* were on brief.

*Lisa S. Goldfluss*, Assistant United States Attorney, argued the cause for the appellee. *Roscoe C. Howard, Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON and ROGERS, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the court filed by *Circuit Judge* HENDERSON.

Separate concurring opinion filed by *Circuit Judge* ROGERS.

Separate concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Tri–State Hospital Supply Corporation (Tri–State) seeks reversal of the final judgment of the district court dismissing its complaint against the United States for want of subject matter jurisdiction. Relying on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.*, Tri–State sought to recover $3.2 million in damages for the "injury or loss of property" it incurred over a six-year period defending itself against the government's multiple investigations into its importation of surgical instruments from Pakistan. Granting the government's motion to dismiss, the district court held that it lacked authority to award the relief sought by Tri–State because the FTCA does not expressly waive the sovereign immunity of the United States from liability for attorney's fees. *Tri-State Hosp. Supply Corp. v. United States*, 142 F. Supp. 2d 93, 101–04 (D.D.C. 2001) (*Tri-State*).

On appeal, Tri–State argues that the district court erred in holding that "money damages . . . for injury or loss of property," 28 U.S.C. § 1346(b)(1), recoverable under the FTCA for claims of abuse of process and malicious prosecution, *id.* § 2680(h), do not include the attorney's fees Tri–State expended defending itself against the government's alleged torts. We agree and hold that attorney's fees *qua* damages are recoverable against the United States for abuse of process and malicious prosecution if "the law of the place" where the tort occurred so provides. *Id.* § 1346(b)(1). Accordingly, we reverse the district court's dismissal of Tri–State's action and remand the matter for further proceedings to consider Tri–State's specific FTCA allegations.

## I. Background

Tri–State is a small, privately-owned corporation that sells hospital supplies throughout the United States.[1]  In the early 1980s, Tri–State began importing surgical instruments—forceps, scissors and the like—from suppliers in Pakistan.  The surgical instruments entered the United States at the Port of Detroit, where Tri–State engaged the services of a licensed customs broker, LEP International, Inc. (LEP), to complete the required customs entry forms.  The forms require the importer to list "the price actually paid or payable" for goods entering the country.  19 U.S.C. § 1401a(b)(1).

Although Tri–State in fact paid the invoice price for the imported goods, it subsequently received rebates from its Pakistani suppliers.  From 1984 to 1986, Tri–State consulted with LEP regarding the manner in which it should declare the price "actually paid or payable" for the surgical instruments it imported from Pakistan.  LEP advised Tri–State to declare the price that was reflected on the invoices accompanying the imported supplies.  As a result, Tri–State declared a higher price on the customs entry forms than the price it ultimately paid for the supplies after deducting the subsequent rebates.  Because the goods imported from Pakistan were duty-free, however, the United States Customs Service (Customs) suffered no loss of revenue as a result of this practice.[2]  The customs entry forms do not require disclosure of any price rebate.  *See id.*

Beginning in early 1994, Tri–State became the subject of civil and criminal investigations for allegedly falsifying the

---

[1] Because we review here the dismissal of Tri–State's complaint for lack of subject matter jurisdiction, "we 'must accept as true all of the factual allegations contained in the complaint.' " *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n.1 (2002)).

[2] "In fact, by declaring only the higher invoice price, Tri–State paid more money to Customs in merchandise processing fees than it would have paid if it [had] declared a lower price (after deduction of the rebates) for the instruments."  Complaint at ¶ 12.

forms it submitted to Customs. On March 28, 1994, Customs officials executed a search warrant at Tri–State's headquarters, seizing evidence relating to the value of surgical instruments imported from Pakistan. Over the next year, Customs sought the indictment of Tri–State and two of its executives for criminal customs fraud. These efforts ultimately proved unsuccessful, however, as both the United States Attorney for the Eastern District of Michigan and the United States Attorney for the Eastern District of Virginia declined to prosecute Tri–State.

Notwithstanding the federal prosecutors' decision not to indict Tri–State for criminal customs fraud, Customs began to issue a series of civil penalty notices against Tri–State in 1995 based upon allegations that it had fraudulently overstated the prices it had paid for imported surgical instruments and that it had engaged in an international money laundering scheme. Undaunted, Tri–State steadfastly refused to pay any of the amounts alleged in the various penalty notices. In November 1996, Customs referred its case to the Department of Justice (DOJ) for the collection of civil penalties. DOJ then brought suit against Tri–State, on behalf of Customs, in the United States Court of International Trade (CIT) on April 28, 1997.

On numerous occasions before and during the enforcement trial, Tri–State's counsel explained to both DOJ and Customs that Tri–State had relied on LEP's advice in reporting the prices of the surgical supplies it had imported from Pakistan. Evidence likewise emerged both before and during trial that indicated that Tri–State had not in fact engaged in any fraudulent scheme. After the government rested its case, Tri–State moved for judgment as a matter of law on two of the three counts. DOJ then decided to dismiss its fraud claim against Tri–State. The CIT subsequently granted Tri–State's motion for judgment as a matter of law on the gross negligence count, finding "[no] evidence which rises to the level of willful or wanton conduct." Complaint at ¶ 156. At the close of trial, the jury deliberated on the sole remaining negligence count and returned a verdict in Tri–State's favor.

Tri–State filed the instant lawsuit under the FTCA on June 20, 2000 to recover the $3.2 million in attorney's fees it had incurred defending itself against the government. Count I of the complaint alleged that the government engaged in a malicious prosecution because it lacked probable cause to issue the penalty notices against Tri–State or to sue Tri–State for collection of those penalties in the CIT. It also claimed that Customs officials knowingly violated their own regulations by seeking to impose civil penalties on Tri–State. Count II alleged that the government engaged in an abuse of process in connection with the penalty notices and enforcement trial.

The government then moved to dismiss Tri–State's complaint for lack of subject matter jurisdiction, arguing that Tri–State's claims were jurisdictionally barred because the United States had not waived its sovereign immunity from suit. Granting the government's motion to dismiss in part,[3] the district court held that because the FTCA does not contain an express waiver of sovereign immunity for the recovery of attorney's fees, it lacked authority to award as damages the attorney's fees Tri–State expended defending

---

[3] The district court likewise dismissed, as jurisdictionally barred, Tri–State's claims arising from the alleged conduct of DOJ attorneys. *Tri-State*, 142 F. Supp. 2d at 98. Concluding that the federal prosecutors were not "investigative or law enforcement officers" as defined by the FTCA, the district court held that claims arising from their conduct were barred by 28 U.S.C. § 2680(h), the FTCA's abuse of process/malicious prosecution exception. *Id.* However, the district court also concluded that the Customs officials referenced in the complaint could be considered "investigative or law enforcement officers" under section 2680(h); it therefore held that Tri–State's claims based on the alleged torts of Customs officials were *not* barred. *Id.* at 98–100. In addition, the district court rejected the government's argument that Tri–State's claims against Customs officials for falsifying records, lying under oath and violating customs regulations were barred by the FTCA's discretionary function exception. *Id.* at 100–101. These other rulings are not before us, however, as the government chose not to cross-appeal.

itself against the government's alleged tortious conduct. *Tri–State*, 142 F. Supp. 2d at 101–04.

Although the district court recognized the unique posture of Tri–State's case—it sought attorney's fees *qua* damages, not attorney's fees incurred in pursuing the FTCA action—the district court concluded that "the result must be the same" as that obtained in the myriad appellate court decisions holding that attorney's fees are not recoverable under the FTCA. *Id.* at 102. Stating that "parties cannot use artful pleading to circumvent the limitations of a statute," the district court rejected Tri–State's characterization of the $3.2 million in attorney's fees as " 'money damages . . . for injury or loss of property.' " *Id.* (quoting 28 U.S.C. § 1346(b)(1)). The district court further observed that Tri–State had failed to cite a single case in which a court had awarded attorney's fees in an abuse of process or malicious prosecution action brought under the FTCA. *Id.* at 103. Because it also was unaware of any such cases itself, save a single district court decision overturned by the Ninth Circuit on other jurisdictional grounds, the district court declined to "be the first." *Id.* & n.7.

In addition, the district court reasoned that its "analysis is further supported by the fact that Congress established the Equal Access to Justice Act [EAJA] as a separate statutory scheme that specifically waives the government's sovereign immunity for awards of attorney['s] fees." *Id.* Noting that "a precisely drawn, detailed statute pre-empts more general remedies," the district court declined to "imply the availability of attorney['s] fees under the more general FTCA, when the more-precisely drawn EAJA appears to express Congress's clear mandate concerning the issue." *Id.* Because, as Tri–State conceded, it did not meet certain procedural requirements of EAJA, the district court refused to "allow Tri–State to . . . seek[ ] the same relief under a different, more general statute." *Id.* at 104 n.8.

Nevertheless, the district court observed that "all may not be lost for Tri–State," given that its "complaint asserts that [it] incurred 'special injury *including but not limited to*

$3,239,153.60 in damages.'" *Id.* (emphasis in original). The district court thus gave Tri–State the opportunity to move to amend its complaint to clarify "what other 'special injury' it suffered" as a result of the government's actions. *Id.* Tri–State declined to do so, however, choosing instead to file a motion for reconsideration, which the district court denied. Soon thereafter, on January 29, 2002, the district court entered final judgment in the government's favor. Tri–State now appeals.

## II. Analysis

We review *de novo* the district court's dismissal of Tri–State's complaint for lack of subject matter jurisdiction. *See, e.g.*, *Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 341 (D.C. Cir.), *cert denied*, 123 S. Ct. 618 (2002).

### A. Sovereign Immunity and the Federal Tort Claims Act

Absent waiver, the doctrine of sovereign immunity shields the federal government from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941). Because sovereign immunity is jurisdictional in nature, *Meyer*, 510 U.S. at 475, "the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit," *Sherwood*, 312 U.S. at 586. As the Supreme Court has often observed, waiver of sovereign immunity must be "unequivocally expressed in the statutory text" and "strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (internal quotations omitted). A party bringing suit against the United States bears the burden of proving that the government has unequivocally waived its immunity. *See, e.g.*, *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1005 (9th Cir. 1998); *James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The FTCA represents a limited waiver of the government's sovereign immunity, *United States v. Orleans*, 425 U.S. 807, 813 (1976), "grant[ing] the federal district courts jurisdiction

over a certain category of claims for which the United States has . . . 'render[ed]' itself liable," *Meyer*, 510 U.S. at 477 (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Specifically, section 1346(b)(1) of the FTCA confers exclusive jurisdiction to the district courts over

> civil actions on claims against the United States, . . . for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). In *Meyer* the Supreme Court recognized that this language establishes six elements a claim must encompass to be actionable under section 1346(b)(1), namely, the claim must be

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Meyer* 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)). Tri–State's claim plainly satisfies four of the six elements (1, 2, 4, 5): it is against the United States (which is the named defendant), seeks $3,239,153.60 in damages, which were caused by the wrongful conduct (malicious prosecution and abuse of practice) of employees of the United States Justice Department and Commerce Department acting within the scope of their official enforcement duties. For the following reasons, we conclude that the claim also satisfies the third and sixth elements and therefore the district court possessed jurisdiction over the claim under section 1346(b).

First, the money damages sought—compensation for the roughly $3.2 million Tri–State expended defending itself in the prior proceedings may be properly characterized as damages "for injury or loss of property" within the meaning of the third statutory element of section 1346(b)(1)—whether they be considered as damages for "injury"—actionable injury other than "personal injury" (here, for example, being subjected to indictment, trial, penalties, etc.[4])—or viewed as damages for "loss of property" (that is, of the funds necessarily expended to defend against the wrongful legal proceedings). In fact, expenditures for legal defense traditionally make up a major component of the damages recoverable for malicious prosecution and abuse of process. *See* Restatement (Second) of Torts, §§ 671(b) (damages for unjustifiable criminal litigation), 681(c) (damages for unjustifiable civil litigation for abuse of process); W. Page Keaton *et al.*, *Prosser and Keeton on Torts*, §§ 119, at 888 (criminal malicious prosecution damages); 120, at 895 (civil malicious prosecution damages) (5th ed. 1984). It is therefore unlikely that the Congress intended to foreclose such damages in actions against the government under the FTCA which expressly authorizes actions for malicious prosecution and abuse of process. *See* 28 U.S.C. § 2680(h) ("provisions of . . . section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, *abuse of process, or malicious prosecution*") (emphasis added); *see also Smith v. United States*, 507 U.S. 197, 203 (1993) ("We should also have in mind that the [FTCA] waives the immunity of the United States and that . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended.") (quoting *United States v. Kubrick*, 444 U.S. 111, 117–118 (1979)). When the Congress wished to except a class of damages from the FTC, it had no

---

[4] *See General Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998) (O'Scannlain, J., dissenting) (identifying "injury" in FTCA malicious prosecution action, for statute of limitation purpose, as "the indictment").

difficulty doing so specifically and unambiguously. *See* 28 U.S.C. § 2674 (excepting government liability for pre-judgment interest or punitive damages) (discussed *infra* p. 12).

Even if an FTCA claim satisfies section 1346(b)(1)'s third requirement it may yet fail the sixth requirement and juris-diction be therefore lacking. The section's sixth element re-quires that the alleged wrong have been done "under circum-stances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." In *Meyer*, the Supreme Court made clear that "[section] 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *Meyer*, 510 U.S. at 478. Thus, under the sixth element, state law establishes the elements of a particular tort that is otherwise actionable under the FTCA. While the choice of law issue is not before us, we note that the District of Columbia is not alone in allowing attorney's fees to be recovered as damages in a malicious prosecution suit. Our examination of state tort law reveals that many states permit the recovery of attorney's fees *qua* damages in malicious prosecution suits—and, to our knowledge, not a single state forbids the practice.[5] Assum-ing, then, without deciding, that District of Columbia tort law applies in this case, Tri–State will be able to seek such damages here.

To be sure, several appellate courts have held that attor-ney's fees are not recoverable under the FTCA. *See, e.g., Anderson v. United States*, 127 F.3d 1190, 1191–92 (9th Cir.

---

[5] *See, e.g.*, *Stevens v. Chisholm*, 178 P. 128, 131 (Cal. 1919); *Technical Computer Servs., Inc. v. Buckley*, 844 P.2d 1249, 1256 (Colo. Ct. App. 1992); *Cal. Fed. Sav. & Loan Ass'n v. Coley*, 593 So. 2d 1152, 1153 (Fla. Dist. Ct. App. 1992); *Davis v. Rudolph*, 52 N.W.2d 15, 20 (Iowa 1952); *Nelson v. Miller*, 607 P.2d 438, 447 (Kan. 1980); *Wheeler v. Hanson*, 37 N.E. 382, 386 (Mass. 1894); *Reenan v. Klein*, 444 N.E.2d 63, 65 (Ohio Ct. App. 1981); *Bucher v. Staley*, 297 N.W.2d 802, 806 (S.D. 1980); *see also* RESTATEMENT (SECOND) OF TORTS § 671 & cmt. c, § 681.

1997) ("Congress has not waived the government's sovereign immunity for attorney['s] fees and expenses under the FTCA."), *cert. denied*, 523 U.S. 1072 (1998); *Joe v. United States*, 772 F.2d 1535, 1537 (11th Cir. 1985) ("The FTCA does not contain the express waiver of sovereign immunity necessary to permit a court to award attorney['s] fees against the United States directly under that act."). However, Tri–State is not seeking the attorney's fees it incurred in bringing its FTCA action but rather "damages in the form of attorney's fees already expended in defending itself against the underlying tortious conduct." Br. for Appellant at 33. Because *Anderson*, *Joe* and similar cases stand only for the proposition that a prevailing party may not recover the attorney's fees incurred in prosecuting an FTCA action, they provide no basis for denying Tri–State recovery of its damages—simply measured in the form of attorney's fees—here. *Anderson*, 127 F.3d at 1191–92; *Joe*, 772 F.2d at 1536–37.

Moreover, as Tri–State correctly observes, a pat reliance upon cases such as *Anderson* and *Joe* effectively reads a damage-specific waiver requirement into the FTCA; *i.e.*, absent the express waiver of a specific category of damages—for example, pain and suffering—that category of damages may not be recovered under the FTCA. In our view, at least two rationales counsel against such a reading. First, the FTCA expressly precludes the recovery of prejudgment interest and punitive damages only. 28 U.S.C. § 2674. The inclusion of this provision suggests that other categories of damages should not be precluded. *See, e.g., Qi–Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) ("[A]n item which is omitted from a list of exclusions is presumed not to be excluded."); *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994) ("Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions."). Second, given the absence of any damage-specific waiver in the FTCA itself, reading such a requirement into the statute could preclude the recovery of *any* category of damages, including pain and suffering, lost wages and medical expenses. By adhering to the ordinary meaning of section 1346(b)(1), however, we avoid such an illogical result. *See*

*United States v. Wilson*, 290 F.3d 347, 361 (D.C. Cir.) (" 'absurd results' are strongly disfavored" in construing statute (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)), *cert. denied*, 123 S. Ct. 581 (2002).[6]

---

[6] Tri–State's reading of the statute is lent further support by *General Dynamics Corp. v. United States*, 1996 WL 200255 (C.D. Cal. March 25, 1996), *rev'd on other grounds*, 139 F.3d 1280 (9th Cir. 1998), which held that attorney's fees were recoverable "money damages . . . for injury or loss of property" in a negligence action brought under the FTCA. In *General Dynamics*, the plaintiff corporation brought an FTCA action against the United States alleging that the Defense Contract Audit Agency (DCAA) had committed professional malpractice in performing an audit. *Id.* at *1. As a result of the DCAA audit, the DOJ initiated—but ultimately dismissed—criminal and civil litigation against General Dynamics. *Id.* at *31–32. In its subsequent FTCA action, General Dynamics sought to recover $25.8 million in damages "representing the legal fees and other litigation expenses" that the corporation incurred defending itself against the government's criminal and civil cases. *Id.* at *32. Noting that "[c]ompensation for the loss of money or for expenditures is a proper measure of damages in an action for professional malpractice" under California law, *id.* at *35 (citing *Electronic Equip. Express, Inc. v. Donald H. Seiler & Co.*, 176 Cal. Rptr. 239 (1981)), the district court concluded that "money expended on attorney['s] fees due to a defendant's negligence is a recoverable damage," *id.* (citing *Budd v. Nixen*, 6 Cal. 3d 195, 201–02 (1971)). "[S]uch expenses are 'money damages' for injury or loss of property within the context of the FTCA," the district court held, "because General Dynamics expended its own money to protect itself from injury resulting from the prosecution." *Id.*

The Ninth Circuit reversed, however, holding that the FTCA's discretionary function exception precluded the district court from exercising subject matter jurisdiction over General Dynamics's claim. *General Dynamics*, 139 F.3d at 1282–86. Although the Ninth Circuit did not discuss—much less criticize—the district court's interpretation of section 1346(b)(1), Judge O'Scannlain, dissenting in part, observed that "identifying the injury for which General Dynamics seeks relief is simple: the injury is the indictment. In defending itself against the erroneously premised indictment, General Dynamics spent over $25,000,000 in attorney's fees." *Id.* at 1288. While he concurred in the result because, in his view,

We note that the government finds some support for its position in a series of Ninth Circuit decisions holding that the FTCA does not confer subject matter jurisdiction upon the district court for claims seeking expenses incurred by states in fighting forest fires negligently set in federally-controlled forests. *See Idaho ex rel. Trombley v. Dep't of Army*, 666 F.2d 444 (9th Cir.), *cert. denied*, 459 U.S. 823 (1982); *California v. United States*, 307 F.2d 941 (9th Cir. 1962), *cert. denied*, 372 U.S. 941 (1963); *Oregon v. United States*, 308 F.2d 568 (9th Cir. 1962), *cert. denied*, 372 U.S. 941 (1963). "Such expenses," the Ninth Circuit reasoned, "simply do not constitute 'money damages' 'for injury or loss of property' under the FTCA." *Idaho*, 666 F.2d at 446. Because it concluded that the state-plaintiffs had sought the recovery of firefighting expenses and not damages to person or property, the Ninth Circuit thrice held that section 1346(b)(1) does not

General Dynamics's claim was time-barred under 28 U.S.C. § 2401(b), Judge O'Scannlain considered the claim to be "otherwise valid," *id.*, and further observed that "the government . . . should have reimbursed the $25,880,752 in resulting attorney's fees," *id.* at 1289.

Tri–State claims that a second district court decision, *Ware v. United States*, 971 F. Supp. 1442 (M.D. Fla. 1997), likewise supports its position. Ware was acquitted of federal drug charges and sued the United States for malicious prosecution under the FTCA. *Id.* at 1446. Although the district court concluded that Ware had failed to establish three of the six elements of malicious prosecution under Florida law, thus warranting a judgment in the government's favor, *id.* at 1460–72, it further observed in its discussion of damages that "[r]easonable out-of-pocket expenses are one type of compensatory damages available to a malicious prosecution plaintiff," *id.* at 1471. Because Ware had court-appointed counsel at the time of his prosecution, however, the district court concluded that he had not incurred "any discernable out-of-pocket expenses" in defending himself. *Id.* Seizing upon the aforementioned passage, Tri–State asserts that the district court's "holding" clearly indicates that "if the plaintiff had paid for his own counsel, as Tri–State did, those out-of-pocket expenses would have been recoverable under the FTCA." Br. for Appellant at 25. The district court's discussion of out-of-pocket expenses, however, is plainly dicta.

confer jurisdiction upon the district court to hear such claims. *See id.* at 446; *see also California*, 307 F.2d at 944; *Oregon*, 308 F.2d at 569.[7]

Tri–State attempts to distinguish the Ninth Circuit's firefighting expenses decisions on two distinct bases. First, Tri–State argues that the Ninth Circuit's decisions are inapposite because, unlike the state-plaintiffs in *Idaho*, *California* and *Oregon*, it has alleged the commission of intentional torts—abuse of process and malicious prosecution—rather than negligence. This argument fails to withstand close scrutiny, however, as none of the Ninth Circuit's decisions appears to turn on the nature of the cause of action alleged. *See Idaho*, 666 F.2d at 446; *California*, 307 F.2d at 943–44; *Oregon*, 308 F.2d at 569.

_____

[7] The government also relies upon *Charles Burton Builders v. United States*, 768 F. Supp. 160 (D. Md. 1991), which held that an FTCA plaintiff could not recover the expenses it incurred in testing its property for environmental damage where the government's alleged tortious conduct had in fact caused no physical damage to the property. *Charles Burton Builders*, 768 F. Supp. at 161–63. After discussing the Ninth Circuit's firefighting expenses cases, the district court in *Charles Burton Builders* observed:

> [The precedents] all indicate that in order to be covered by the FTCA there must have been a physical impact of some type on the plaintiff or its property. A claim for damages sustained only in reaction to governmental activity, even though possibly cognizable under state law, does not constitute an action for money damages for "injury or loss of property."

*Id.* at 162. As Tri–State correctly observes, however, this decision "stands for nothing more than the proposition that a plaintiff who has not suffered any damages in the form of harm to or loss of property, may not recover its expenses for conducting tests to determine whether such damages occurred." Reply Br. at 13. Because Tri–State is not seeking comparable damages—*i.e.*, expenses incurred in determining whether it has an abuse of process or malicious prosecution claim against the government—the district court's ruling in *Charles Burton Builders* fails to undermine Tri–State's claim.

15

Citing *New York v. United States*, 620 F. Supp. 374 (E.D.N.Y. 1985), Tri–State next argues that the Ninth Circuit decisions are inapplicable because, unlike the state-plaintiffs in *Idaho*, *California* and *Oregon*, it has in fact alleged injury to property. This argument has some appeal. In *New York v. United States*, the district court held that the Ninth Circuit's firefighting expenses cases did not control New York's claim for money damages under the FTCA for the costs it incurred in removing jet fuel contaminants from a former U.S. Air Force base. *Id.* at 375–79. Rejecting the government's argument that the state's damages claim was really an equitable restitution claim seeking compensation for the alleged costs of cleaning up the polluted areas, the district court agreed with New York that "the cost of removing the contaminants is simply the suggested measure of damages to its property." *Id.* at 378. Similarly, Tri–State argues here that the attorney's fees it incurred defending itself represent " 'the measure' of the damage to its property," *i.e.*, its financial assets. Reply Br. at 12. Although the *New York* decision arguably involved a more conventional loss of property—groundwater underlying the former Air Force base was contaminated—Tri–State's argument carries a certain degree of force. *New York*, 620 F. Supp. at 375.

To the extent that the Ninth Circuit's firefighting expenses decisions require a physical injury to recover "money damages" under the FTCA, we decline to follow them. No such requirement appears on the face of section 1346(b)(1) and we decline to engraft one. We thus conclude that Tri–State has adequately stated a claim "for money damages . . . for injury or loss of property" within section 1346(b)(1) to the extent that the state law governing Tri–State's tort claims allows the recovery of attorney's fees *qua* damages for abuse of process and malicious prosecution. 28 U.S.C. § 1346(b)(1).

### B. The Equal Access to Justice Act

The district court declined to sanction the availability of attorney's fees "under the more general FTCA, when the more-precisely drawn EAJA appears to express Congress's

clear mandate concerning the issue." *Tri-State*, 142 F. Supp. 2d at 103. On appeal, Tri–State contends that the district court's reliance upon EAJA was misplaced because the statute does not preclude recovery of attorney's fees *qua* damages for injury or loss of property under the FTCA. Once again, we agree with Tri–State.

"[S]overeign immunity protects the United States from attorney's fees liability 'except to the extent [the government] has waived its immunity [from suit].' " *United States v. Wade*, 255 F.3d 833, 836 (D.C. Cir. 2001) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)). As we recognized in *American Hospital Association v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991), EAJA expressly waives the government's sovereign immunity for the recovery of attorney's fees "in two distinct manners." Under 28 U.S.C. § 2412(d)(1)(A), a "prevailing party" may recover reasonable attorney's fees against the United States if the government takes a substantially unjustified position in the underlying civil litigation. In order to recover attorney fees under section 2412(d)(1)(A), however, a party must satisfy certain threshold eligibility requirements. 28 U.S.C. § 2412(d)(2)(B) (corporate claimant must have net worth not in excess of $7,000,000 or more than 500 employees at time civil action filed). Alternatively, under 28 U.S.C. § 2412(b), a court may award reasonable attorney's fees "to the prevailing party in any civil action brought by or against the United States . . . to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."

The government relies upon our decision in *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 940 F.2d 704 (D.C. Cir. 1991), to argue that EAJA effectively precludes Tri–State from recovering attorney's fees under the FTCA. In *American Postal Workers*, four former probationary employees of the Postal Service sought to use the FTCA to press claims for retaliatory discharge pursuant to state law. *Id.* at 708. Reasoning that the Postal Reorganization Act (PRA) "is the type of 'narrowly tailored employee compensation scheme' that the Supreme Court has

held 'pre-empts the more general tort recovery statutes,' " we ruled that "the FTCA [did] not provide a basis for the asserted claim for relief." *Id.* (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834–35 (1976)). Because the PRA incorporated "an 'elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations,' " we concluded that "we have no warrant to permit the appellants to use the FTCA as a means of circumventing it." *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).[8] From the government's perspective, Tri–State's FTCA action "is no less an attempt to 'circumvent' the exquisitely-detailed procedures, limitations, and conditions set forth in" EAJA, specifically, the eligibility criteria of section 2412(d)(2)(B). Br. for Appellee at 33.

Tri-State views matters differently. Because EAJA explicitly provides that "[n]othing in section 2412(d) . . . alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees," EAJA, Pub. L. No. 96–481, § 206, 94 Stat. 2321 (1980), Tri–State argues that EAJA has no effect upon its right to recover attorney's fees—as "money damages . . . for injury or loss of property"—under the FTCA. It thus contends that EAJA's "no preclusion" provision renders the government's reliance upon *American Postal Workers* inapposite because the FTCA's waiver of sovereign immunity for claims of abuse of process and malicious prosecution is an "other provision" of federal law which authorizes the award of attorney's fees. *See* 28 U.S.C. § 2680(h).

Although the government correctly observes that the FTCA lacks an express waiver for the recovery of attorney's

---

[8] Although the employees in *American Postal Workers* could not seek redress under the PRA's compensation scheme—they had not completed the requisite one year of continuous service before being terminated—this fact did not alter our decision. *American Postal Workers*, 940 F.2d at 708–09. On the contrary, we viewed the exclusion of appellants from the PRA's compensation scheme as evidence of the Congress's intent to deny a particular class of employees the protections of the statutory scheme which, if available, provided postal workers their only remedy. *Id.* at 709.

fees, its argument under EAJA ignores the critical feature of this case: Tri–State does not seek to recover attorney's fees per se, but rather attorney's fees *qua* damages—for the torts of abuse of process and malicious prosecution. Because the FTCA waives sovereign immunity for claims of abuse of process and malicious prosecution, 28 U.S.C. § 2680(h), and in light of the fact that the statutory waiver preceded the enactment of EAJA by six years, *compare* Act of Mar. 16, 1974, Pub. L. No. 93–253, § 2, 88 Stat. 50 (1974) (amending section 2680(h)), *with* EAJA, Pub. L. No. 96–481, § 206, 94 Stat. 2321 (1980), we have little trouble agreeing with Tri–State that EAJA does not "alter[ ], modif[y], repeal[ ], invalidate[ ], or supersede[ ]" the pre-existing remedies afforded by the FTCA. The government's reliance on EAJA is therefore misplaced.

## III.  Conclusion

For the foregoing reasons, we conclude that the FTCA provides jurisdiction over an action to recover attorney's fees *qua* damages against the United States for the torts of abuse of process and malicious prosecution under the FTCA if "the law of the place" where the tort occurred so provides. 28 U.S.C. § 1346(b)(1). Accordingly, we reverse the judgment of the district court and remand the matter for further proceedings consistent with this opinion.

*So ordered.*

1

ROGERS, *Circuit Judge*, concurring: The court "hold[s] that attorney fees *qua* damages are recoverable against the United States for abuse of process and malicious prosecution if 'the laws of the place' where the tort occurs so provides." Op. at 2. As I interpret the court's opinion, the terms "injury or loss of property" under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), are defined as a matter or federal law in determining whether Tri–State's claim is outside the intended scope of the FTCA, and not defined solely by state law. This follows in my view from the following analysis.

In *Smith v. United States*, 507 U.S. 197 (1993), the Supreme Court acknowledged that its decisions interpreting the FTCA "contain varying statements as to how it should be construed." *Id.* at 203. It announced, however, that it was embracing the approach that "we should not take it upon ourselves to extend the wavier beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended.' " *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979)). *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999), on which the court relies in describing a more stringent standard of review, Op. at 7, involved the Administrative Procedure Act, not the FTCA.

The following year, in *FDIC v. Meyer*, 510 U.S. 471 (1994), the Supreme Court described § 1346(b) as establishing a waiver of sovereign immunity and a cause of action against the federal government if "six elements" are met. *Id.* at 477. Thus, a claim must be:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* (quoting § 1346(b) (alterations in original)). The Court concluded that a federal due process constitutional claim was not cognizable under the FTCA, holding that the claim failed to meet the sixth element because it "could not contain" an allegation that the United States " 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.' " *Id.* at 477–78 (quoting § 1346(b)). As the Court noted, it had "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *Id.* at 478. Because, "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right," a federal constitutional claim could not meet the sixth element of § 1346(b) as it raised no claim under state law, and the "United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id.* at 478. In other words, the Court's reference in *Meyer* to the importance of state tort law for defining the scope of the FTCA is directed solely at the sixth and last element of § 1346(b), but a FTCA claim, as the government notes, can only be established by meeting all six elements.

In analyzing the fourth element of § 1346(b), whether the harm complained of by the plaintiff has been "caused by the negligent or wrongful act or omission of any employee of the Government," the Supreme Court has emphasized that federal law controls the definition of the relevant terms. In *Laird v. Nelms*, 406 U.S. 797, 797 (1972), the plaintiffs sought "recovery for property damage allegedly resulting from a sonic boom caused by California-based United States military planes flying over North Carolina on a training mission." The Fourth Circuit, relying on "a theory of strict or absolute liability for ultrahazardous activities," had reversed the district court's grant of summary judgment for the government based on the absence of negligence. *Id.* at 798. The Supreme Court reversed, noting that it had previously rejected a claim based on strict liability in *Dalehite v. United States*, 346 U.S. 15, 44–45 (1953), and characterized its holding in *Dalehite* as

> not turn[ing] on the question of whether the law of
> Texas or of some other State did or did not recog-
> nize strict liability for the conduct of ultrahazardous
> activities. It turned instead on the question of
> whether the language of the Federal Tort Claims
> Act permitted under any circumstances the imposi-
> tion of liability upon the Government where there
> had been neither negligence nor wrongful act. The
> necessary consequence of the Court's holding in
> *Dalehite* is that the statutory language "negligent or
> wrongful act or omission of any employee of the
> Government," is a uniform federal limitation on the
> types of acts committed by its employees for which
> the United States has consented to be sued. *Re-
> gardless of state law characterization,* the Federal
> Tort Claims Act itself precludes the imposition of
> liability if there has been no negligence or other
> form of "malfeasance or nonfeasance."

*Laird*, 406 U.S. at 798–99 (quoting *Dalehite*, 346 U.S. at 45) (emphasis added). The Supreme Court has taken a similar approach in construing other provisions of the FTCA, such as the independent contractor exception in § 2671, *see Orleans v. United States*, 425 U.S. 807, 814–15 (1976); *Logue v. United States*, 412 U.S. 521, 528 (1973), and the intentional torts exception in § 2680(h), *see United States v. Neustadt*, 366 U.S. 696, 705–06 (1961). As the Court has said with respect to another section of the FTCA prohibiting the award of punitive damages against the government, "the meaning of the term 'punitive damages' as used in § 2674, a federal statute, is by definition a federal question." *Molzof v. United States*, 502 U.S. 301, 305 (1992). *Cf. Indian Towing Co. v. United States*, 350 U.S. 61, 64–65 (1955).

The court notes that it is well-established that under state law (whether or not the District of Columbia provides the correct substantive law to apply in this case) attorney's fees may be collected as damages. Op. at 10 & n.5. Hence, the requirement of the sixth element is met by Tri–State's claim. The question remains whether Tri–States's claim is an "injury or loss of property" under a theory of malicious prosecution. The only Supreme Court case to discuss the terms "injury or

loss of property" is unhelpful for the Court declined, in the course of resolving the scope of the exception under § 2689(c) to "[t]he Act's broad wavier of sovereign immunity," to resolve the scope of § 1346(b). *See Kosak v. United States*, 465 U.S. 848, 852 & n.7 (1984).

Tri–State's contention that its claim falls within the scope of what Congress intended in the FTCA by allowing the recovery of "damages" for "injury or loss of property" is persuasive. *See* Op. at 15. It relies on *New York v. United States*, 620 F. Supp. 374 (E.D.N.Y. 1985), where, in, addressing a claim for the costs of removing contaminants placed in the soil by United States Air Force, *New York*, 620 F. Supp. at 375, the district court cited *Rayonier, Inc. v. United States*, 352 U.S. 315 (1957), which held that negligence by the Forest Service was actionable under the FTCA for recovery of property damage, *see New York*, 620 F. Supp. at 378. The district court in *New York* proceeded to accept New York's position that its clean-up costs were "simply the suggested measure of damages to its property," rejecting the United States' position that New York's claim was in the nature of a claim for equitable restitution for the costs of the clean up. *Id.* So too here, Tri–States' attorneys fees are a measure of the damages it suffered as a result of the government's malicious prosecution and abuse of process. Cases imposing a "physical injury" requirement, such as *California v. United States*, 307 F.2d 941, 944 (9th Cir. 1962), are distinguishable, and hence the court has no need to hold that it declines to follow them, Op. at 15, because in a malicious prosecution cause of action, it is the litigation itself that is the injury (and hence the court need go no further in rejecting that line of authority). "The interest in freedom from unjustifiable litigation is protected by actions for malicious prosecution and abuse of process." W. Page Keeton, et al., *Prosser and Keeton on Torts*, § 119, at 870 (5th Ed. Hornbook Series Lawyer's Ed. 1984). Thus, the money spent on attorney's fees is money spent rectifying or correcting that injury and is recoverable. *Cf. New York*, 620 F. Supp. at 378–79. As the

court notes, Tri–State is not seeking to recover its attorney's fees for bringing its claim under the FTCA. Op. at 11.

Contrary to Congress's endorsement of recovery for malicious prosecution, 28 U.S.C. § 2680(h), the government's proposed restriction of recovery of damages for "injury or loss of property or personal injury or death" in malicious prosecution claims to claims involving physical damage or injury to the plaintiff's property could mean that no recovery would be possible, for example, for civil prosecutions against private corporations involving no imprisonment or other physical intrusion on the plaintiff, nor any loss of a property right by the plaintiff who will (by definition) have won the prior lawsuit. There is no reason to think that Congress was unaware of the traditional meanings of various tort terms when it added malicious prosecution by law enforcement officers to § 2680(h), and that tort has traditionally allowed for recovery of attorneys fees. *See Restatement (Second) of Torts* § 681(c); *Prosser and Keaton,* § 119 at 888; *id.* § 120 at 889–92, 895–96; A.L. Azores, Annotation, *Attorney's Fees as Element of Damages in Action for False Imprisonment or Arrest, or for Malicious Prosecution*, 21 A.L.R.3d 1068 § 2 (1968). The legislative history indicates that in allowing recovery for malicious prosecution or abuse of process and other intentional torts Congress intended to reach "any case in which a Federal law enforcement agent committed the tort while acting within the scope of his employment or under color of Federal law." *See S. Rep. No.* 93–588 at 4 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2789, 2791.

Under this analysis, which clarifies the federal and state-law questions, the court's opinion is properly read as holding with respect to claims for malicious prosecution and abuse of process, claims specifically recognized by Congress as viable under § 2680(h), that, as a matter of federal law, recovery of attorneys fees as damages is within the scope of what Congress meant by "injury or loss of property" under § 1346(b). Only if attorney's fees are collectable as damages under state law will a plaintiff be able to recover them under the FTCA because the sixth element of § 1346(b) will then have been satisfied. The court's references to District of Columbia law,

other state law, and the *Restatement (Second) of Torts*, *see* Op. at 10 & n.5, relate therefore only to its conclusion that, for purposes of that sixth element, attorney's fees will be collectable. So understood, I concur inasmuch as the Equal Access to Justice Act, *see esp.* 28 U.S.C. § 2412(d), is not a bar to Tri–States' claim. Op. at 16–18.

1

SILBERMAN, *Senior Circuit Judge, concurring*: It is not apparent to me why both my colleagues found it necessary to author opinions in this case. There is, to be sure, a perceptible difference in their stated views as to our scope of review of the Federal Tort Claims Act. Judge Henderson emphasizes that as a statute waiving sovereign immunity it should be strictly construed against a plaintiff, whereas Judge Rogers justifiably points to *Smith v. United States*, 507 U.S. 197 (1993). There the Supreme Court, in an opinion by the Chief Justice, specifically addressing the construction of the FTCA, adopted a more neutral standard of review. *Id.* at 203 (quoting *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979)). Still, Judge Henderson cites *Smith* (although in the wrong place), and, amusingly, the Chief Justice himself in a subsequent case, *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999), on which Judge Henderson relies, repeated the standard sovereign immunity strict construction maxim and cited FTCA cases.

The question is not totally academic because some of the statutory language we are interpreting ("money damages . . . for injury or loss of property, or personal injury or death . . . ." 28 U.S.C. 1346(b)) is rather awkward, even ambiguous, but both judges (as do I) reject the government's strained interpretation as excluding attorney's fees from the definition of injury or loss of property so I do not see any difference in their actual approaches.

Nor do I detect any differences between my colleagues as to their understanding of the respective spheres of Federal and state law. Therefore I do not understand why, in the interest of collegiality, one opinion could not have been fashioned. Perhaps the problem stems from my colleagues' writing style. *See generally* Richard A. Posner, *Judges' Writing Styles (And Do They Matter?)*, 62 U. CHI. L. REV. 1421 (1995).